## M'MILLAN & M'MILLAN *against* VANDERLIP.

IN ERROR, on *certiorari*, from a justice's court. *Vander-lip* sued *J.* and *A. M'Millan*, by summons, before a justice, in an action on the case. He declared, stating his demand, *September* 26, 1812, to be for "spinning 845 runs of yarn, at 3 pence *per* run; for damage for not finding a sizeable jenny, 10 dollars; for damage for not finding a sufficient instructor, 10 dollars; for damage for spinning bad roving, 10 dollars; for damage for time lost, for want of roving, 5 dollars."

The defendant pleaded the general issue, and there was a trial by jury.

The plaintiff proved that he had worked for the defendants below, 11 or 13 weeks; and the witness stated, that the plaintiff said he was to work one year, to spin at three cents per run; but should not make wages, the roving was so bad.— Another witness said he understood from the defendants, that the plaintiff had agreed to work with the defendants, 10½ months, at 3 cents per run: and an account was produced, dated *September* 1, 1812, in which the defendants charged the plaintiff three dollars, paid to him; and credited him with spinning 845 runs of yarn. One of the witnesses said he was to have 5 cents a run, and his board; and he said he understood from all parties, that *Vanderlip* was to have 3 cents per run, and work 10½ months. In an additional return, it was stated by the justice, that it was understood by him, and he believed by the jury, that the plaintiff below left the service of the defendants below, at the date of the account: though he did not recollect that it was either proved or admitted. The jury found a verdict for the plaintiff below, for 22 dollars and 35 cents; on which the justice gave judgment.

*Wendell*, for the plaintiff in error.

*Crary*, contra.

Where A. agreed to work for B. 10 1·2 months, and spin yarn, at *three cents* per run; and afterwards left the service of B.; and brought an action against him for spinning 845 runs of yarn, at 3 cents per run: it was held, that the contract of A. was entire, and must be performed as a condition precedent, before he could bring an action against B., for the price of his labour.

(SPENCER, J. delivered the opinion of the court. The question is, whether the contract of the defendant in error is an entire contract, operating as a condition precedent;) and, as such, necessary to be performed before the plaintiffs in error were liable; or whether we are to consider the agreement, to pay three cents per run, as a distinct agreement, on the one side; and the promise to work for 10½ months, as independent and unconnected with the rate at which the defendant in error was to spin the yarn. It has been well observed by *Srejeant Williams,* in a note to *Pordage* and *Cole,* (1 *Saun.* 320, note 4.) that the old cases proceeded on very subtle and nice distinctions; and it might have been added, that some of them were carried to a length that worked great injustice, and defeated the intentions and understandings of men, not versed in nice and technical rules. (To show to what unreasonable results the courts arrived, I will barely mention two cases. A. agreed to serve B. a year, and B. agreed to pay him 10 pounds; and it was held, A. might maintain an action against B. for the money, before any service. Again, A. covenanted with B. to marry his daughter; and B. covenanted to convey an estate to A. and the daughter, in special tail: though A. marry another woman, or the daughter marries another man, A. may maintain an action against B. on the covenant.

The good sense of modern times has exploded these subtle notions; and contracts are now expounded according to the real intention of the parties: thus, in *Waddington* v. *Oliver,* (5 *Bos.* and *Puller,* 2. N. S. 61.) the plaintiff sold the defendant 100 bags of hops, at 56 shillings per hundred, to be delivered on or before 1st *January,* 1805, as might be agreeable to the plaintiff. On the 12th of *December,* twelve bags were delivered, and payment was immediately demanded; and on refusal to pay, a suit was brought. The court were clearly of opinion, that the contract was entire; and could not be split; and that the plaintiff had no right to bring an action until the whole quantity was delivered, or until the time for delivery of the whole had arrived. The 3d note of *Serjeant Williams* to 2d *Saun.* 352. furnishes a variety of cases, showing the grounds on which the latter cases have placed the dependency or independency of contracts. There are many distinctions, not necessary now to be noticed; but the

2

ALBANY,
Jan. 1815.

M'MILLAN
v.
VANDERLIP.

object of them is to promote substantial justice, by ascertaining the intention of the parties, and carrying them into effect, without a literal adherence to words, or the order of sentences.

It is evident to my mind, that the parties before us intended that *Vanderlip* should serve the *M'Millans*, for 10½ months, and that he should be paid 3 cents for each run of yarn spun by him; and that they intended this as one entire contract. The *M'Millans* could not mean to have paid by the run; and to subject themselves to a suit, *toties quoties*. We have a right to infer from the plaintiff's declaration, in the court below, as well as from the fact, that one of the witnesses was to have 5 cents a run; that *Vanderlip* was a novitiate in spinning; and, consequently, that he would be more profitable to his employers in the latter part of the term. If the contract was entire, and looked as well to the price *per* run, as to the time of service, it necessarily formed a condition precedent: and then, *Vanderlip* could not sue until he had performed his contract of service, or until the period within which it was to be performed had elapsed.

The latter qualification is drawn from the case of *Waddington* v. *Oliver:* though, I confess, I do not perceive the grounds on which it rests. It appears to me, that the construction I have put on this contract, is not only warranted by the agreement itself; but that it is a very useful and salutary one. The general practice, in hiring labourers or artisans, is, for 6 or 12 months, at so much per month: the farmer hires a man for 6 or 12 months, at monthly wages; and he takes his chance of the good, with the bad months. It is well known, that the labour of a man, during the summer months, is worth double the labour of the same man, in winter; but upon the principles contended for by the defendant's counsel, if the farmer hires in the autumn, for twelve months, at monthly wages, the labourer may quit his employ on the first of *May*, and sue for his wages, and recover them: leaving the farmer the poor resort of a suit for damages. The rule contended for holds out temptations to men to violate their contracts. The stipulation of monthly pay, or in this case, pay by the run, does not disjoin the contract: it is adopted as the means only of ascertaining the compensation, and does not render it less entire. The case from 1 *Roll. Abr.* 29. 1. 36. is a very bald case; and the case

decided by *Hale*, at *Norfolk*, in 1662, (1 *Com. Dig. Action*, F.) is a very unreasonble decision. The contract was to deliver so much corn, before *Michaelmas*, for so much the *coomb ;* and a part only was delivered ; and he ruled, that *assumpsit* lay for so .much, after *Michaelmas :* for, though the agreement was entire, the several delivery makes several contracts. When part of the corn was delivered, towards the fulfilment of an entire contract, and for the convenience of the party delivering, it is extraordinary that such delivery should have annulled the contract ; but it did not, for the case adds : "and the defendant has a remedy for the residue." This could not be, unless the contract remained unaffected by the several delivery. These are cases decided before the courts adopted the true method of considering contracts, in relation to their dependency, or independency.

The entry in the plaintiff's books proves nothing ; for certainly, they were to keep an account of the quantity spun ; and if, for the defendant's accommodation, they were willing to advance cash to him ; that did not vary the contract, or show that they considered themselves liable to pay before the end of the term.

Judgment reversed.