## Case No. 6,830.

### The HUDSON.

[The case reported under above title in 14 Int. Rev. Rec. 36, is the same as Case No. 6,-829.]

---

## Case No. 6,831.

### The HUDSON.

[Olc. 396.] ¹

District Court, S. D. New York. Oct., 1846.

SEAMEN—CONTRACT OF HIRING—MASTER AS WITNESS—DISCHARGE OF CREW—SET-OFF IN ADMIRALTY.

1. A master of a vessel is a competent witness for the owners in a suit in rem for wages by one of the ship's company.
[Cited in Patten v. Darling, Case No. 10,812; The Wanderer, 20 Fed. 656.]

2. A hiring at monthly wages imports that the engagement is by the month, terminable with each month, at the option of either party. If the party hired leaves before the expiration of the month, he loses the whole wages; if he is discharged before its termination, he recovers for the whole time.
[Cited in Truesdale v. Young, Case No. 14,-204.]

3. The discharge of the crew by sale of the vessel on execution, is of the same effect as to their rights as the breaking up of the voyage or discharge of the crew by act of the master.

4. Debts or liabilities of seamen to the master or owner of a vessel for other cause than for misfeasance or nonperformance in the duties of their position, cannot be set up against their demand of wages.

5. Admiralty does not take cognizance of set-off; but allowances may be made to the master or owner by rebatement of wages in compensation of losses or injuries incurred by them in consequence of negligence or fault of the mariner in the performance of his duties.
[Cited in The Henry Ewbank, Case No. 6,376; Dexter v. Munroe, Id. 3.863; Gillingham v. Charleston Tow-Boat & Transp. Co., 40 Fed. 651.]

6. Quere. Whether the civil law action of reconvention, or the remedy of compensatio or stoppage may be had in admiralty?

The libellant brought this suit for the recovery of wages as steward on the steamboat Hudson. He avers that he entered on board in that capacity on the 17th of February, 1846; that no contract was made as to the rate of wages, but that his services were worth forty dollars per month, and that the usage in that line of business is to pay stewards at such monthly rate for the entire season of ten months. He avers that he was discharged the 24th of July thereafter, and claims a decree for ten months' wages at forty dollars per month. The answer controverts these allegations, and asserts that

¹ [Reported by Edward R. Olcott, Esq.]

the libellant was hired by the month and not by the season, served only from March 2d to July 24th, and that his services were not worth forty dollars per month; and that he earned, whilst on board, over and above all payments, fifty-one dollars and seventy-five cents, and no more; that the boat was sold under execution July 21st, and that the libellant was afterwards discharged by the purchaser and now owner. He further avers that libellant was at the time indebted to the boat for liquors sold on board, &c., during the previous year, when bar-keeper, in the sum of forty-one dollars and eighty-three cents, and that claimant tendered him fifty-three dollars before suit brought, and deposited the same in court.

Mr. Haskett, for libellant, contended that the contract was for the season. That a judicial sale of the boat did not discharge the lien for wages, and that Charles J. Hodges, called by the claimant as a witness, was incompetent to testify, on the ground of interest.

Mr. Underhill, for claimant. Hodges was competent; his testimony was adverse to his own interest. 15 Johns. 270; 16 Johns. 70. He also cited 7 Adol. & E. 544; 2 East, 145.

BETTS, District Judge. A preliminary objection was taken to the testimony of Charles J. Hodges, former part owner and manager of the boat, as a witness in this case, based upon his interest in the event of the suit. It was urged that he, as such owner, was personally liable on the contract, and would be obliged to pay the claim of the libellant, if not recovered of the boat. He may have such contingent interest, but it would be one against the party calling him, because he would be most benefited by casting the debt upon the boat. Interests of a remote and uncertain character are not now regarded as disqualifying a witness; they go to his credibility alone. 5 Hill, 476; 1 Phil. Ev. 32; Cowen & Hill's Notes, 131. The libellant has not, in my judgment, produced sufficient evidence to sustain the averments of the libel that his hiring was for the entire season, at $40 per month; on the contrary, in the absence of direct evidence, the implication is, that his engagement was by the month, at monthly wages; and upon all the proofs I do not consider he ought to receive more than twenty-five dollars per month. This was the most the owner ever told him he would pay. The statement was made after the libellant had entered upon his duties on board, and was not controverted by him at the time. The owner had said, if he discharged the libellant, and made another appointment in his place, he meant to allow him wages for the season, and supposed he should pay three hundred dollars. This was a gratuitous statement, not made at the time of any contract between the parties, nor in reference to any

new action or engagement by the libellant. It is not sufficient, therefore, to support the suit, there being no consideration for it; and it is not proof of the terms of the past bargain, because it is put by the master on the supposition or contingency that he might remove the libellant, and seems to have been offered in the way of a consoling suggestion to the libellant in case his place should be taken from him.

The fair import of the whole evidence is, that there was no express agreement for wages, and that the libellant entered into the business as a mere adventure, expecting to receive a monthly compensation for his services, at the rate the owners should consider them worth. This would be a reasonable and appropriate arrangement in appointing him to a situation of trust and responsibility, with the duties of which he was unacquainted. His recompense was not fixed at any price for a general term or period, but was to be a monthly quantum meruit whilst he continued to serve. It is in proof that he was not well qualified for the situation, and I am satisfied there is no just foundation for his claim to a payment exceeding twenty-five dollars per month, for the time he was employed. His action was instituted within a few days after he was discharged from the boat, and cannot be made to embrace more than the time which had then elapsed.

Unless the testimony is clear and unequivocal that the engagement was absolute for a season or definite period, a hiring, at monthly wages, will be regarded an engagement by the month, and thus leaving it optional with either party to terminate the obligation to serve or pay, at the end of the month. If it closes during the running of the month by the discharge of the servant, the master must pay wages for the month; and if by the servant, he loses the wages accruing on the unfinished term. 12 Johns. 165; 13 Johns. 94; Id. 390. The discharge of the libellant in consequence of a judicial sale of the boat must be regarded the act of the owner, leaving her liable to the libellant to the same extent the owner would have been. It was the duty of the libellant to prove clearly the time at which his services commenced. The evidence is, that he went on board the last of February, but the written memorandum of the then master handed over to the purchaser on the sale of the boat, makes it the 2d of March. The former master testifies that date was a mistaken one, yet is not able to supply the time with more certainty. The implication, under such circumstances, is not to be in favor of the libellant, and accordingly I should hold that the time of computing his wages begins with March and ends with July, giving five months payment, at twenty-five dollars per month, or one hundred and twenty-five dollars. The $41.83, alleged by claimants to be due to the boat by the libellant, for various articles had by him on board, cannot be regarded in this action. It at best could

enure only by way of set-off, and the admiralty does not take cognizance of cross-demands, unless they are parcel of the contract on which suit is founded, or tend to prove it imperfectly fulfilled, or performed in such manner as to be injurious to the party sued. Willard v. Dorr [Case No. 17,680]; The Mentor [Id. 9,427]. Here the debt claimed to be due by the libellant was incurred by him the preceding year, when he was employed on the boat as bar-keeper. It is alleged to be for the sale of liquors at the bar, the proceeds of which were retained by him, and for passages given his friends on the boat, all being matters of account or implied assumpsit, appertaining to actions at law and not to maritime suits, and the debt in no way arose out of or was connected with his employment on board as steward. The civil law afforded relief for counter or cross-claims of like kind, by an order of compensation or stoppage (Wood, Civ. Law, bk. 3, c. 9, § 5), made in the lis pendens, but that procedure has never gone into the admiralty practice. The action of reconvention (Wood, Civ. Law, bk. 4, c. 3, § 6), employed to the like end, might perhaps be allowable in admiralty when the whole subject is within its jurisdiction. Dig. lib. 16, tit. 1–3; 1 Poth. Analysis, Pandects, 165, verb. "Compensatio"; Code, lib. 7, tit. 45, art. 14. From the amount of wages, $125, is to be deducted the credit given by the libellant of $35 paid to him; $10, in his hands, admitted to have been received by him as steward, making $45, leaving $80, for which a decree must be rendered, with costs. The $53 deposited in court will be applied in part satisfaction of the decree.