ISAACS, respondent, *v.* MCANDREW et al., appellants.

SERVICES — *special contract — absence of employee.* A servant, who is employed under a contract for a certain time, at a fixed price, cannot recover on the contract for the services he has rendered, if he has left or been compelled to leave his employers through their conduct, before the stipulated time expires.

SERVICES — *effect of special contract — time of service.* A party, who is employed under a written contract, as a superintendent of mines for five years, at a salary of $4,000 per year, but in which no time for its payment is fixed, must perform services for the period of five years, before he can bring an action for any part of his salary.

SERVICES — *time of payment — salary.* If a written contract does not fix the time for the payment of a salary to a servant, who is to work for five years, at a certain salary per year, the law will establish such time at the end of the five years.

SERVICES — *entire contract — remedies — party prevented from performing contract.* A party who is prevented from performing an entire contract by the other party has three remedies; he may keep himself ready, willing and able to perform the contract until it expires, and then sue on the contract, or sue upon the *quantum meruit* for what his services are actually worth, or sue for damages for breach of the contract by the other party.

CONTRACT — *charge on business — personal liability.* An agreement that the traveling and living expenses of a superintendent of mines shall be a charge to and borne by the joint property and business, makes them liens upon such property and business, but does not create any personal liability until the remedy against the property has been exhausted.

STATUTORY CONSTRUCTION — *act prescribing the rate of interest.* Interest is a creature of the statute; and, under the laws of this Territory, the payment of interest for money paid, laid out and expended for another, cannot be enforced unless it is averred and proved that there has been unreasonable and vexatious delay.

PRACTICE — *finding by the jury set aside — services.* A finding by the jury, that a party has performed services for one year, under a contract requiring him to superintend mines in this Territory, will be set aside, if the evidence shows that he left the Territory before the year expired.

CONTRACT FOR MONTANA CURRENCY CONSTRUED — *salary for services.* Under a contract, which provides that a salary for services shall be at the rate of $4,000 a year, in Montana currency, allowing greenbacks to be worth 90 cents of the dollar of said currency, the amount of such salary is $4,000 per year.

CONTRACT — *place of performance and demand.* Under a contract that is made in New York to be performed in Montana, in which the place of payment for services is not fixed, a demand for payment must be made in New York, if the employers have their domicile there.

CONTRACT — *rate of interest after demand for payment for services.* In an action to recover for services performed in Montana, under a contract made in New York, which does not fix the rate of interest, if the payment for services is refused after a demand therefor in New York, the rate of interest would be that prescribed by the laws of this Territory.

HUSBAND AND WIFE—*void contract and judgment.* A contract by which a party agrees to perform services for three persons, one of whom is his wife, and a judgment obtained thereon, are void at common law as between the husband and his wife.

PRACTICE—*withdrawal of counter-claim.* It is not error for the court to refuse to allow a party to withdraw his counter-claim, after the testimony has been closed and while the court is instructing the jury, unless manifest injustice would result to the rights of the parties.

*Appeal from the First District, Madison County.*

THIS action was tried in November, 1869, by a jury, who returned a general verdict for Isaacs, on which the court, WARREN, J., rendered judgment.

Isaacs was restrained by an order of the court, in a suit in which McAndrew and another were the plaintiffs, from acting as superintendent of mines under the contract set forth in the opinion, from January 7, 1868, to September, 1868. It appeared from the evidence that the contract had never been dissolved or canceled by the parties ; and that Isaacs testified that he notified McAndrew in New York city, in April, 1868, that he had come there to make a settlement with appellants, at the request of their agent in Montana, and that McAndrew then said that no person had any authority to so notify him to appear.

The other facts appear in the opinion.

W. F. SANDERS, for appellants.

Respondent could not claim over $4,000 per annum, with interest, as damages. The agreement to pay $4,000 limits the sum to that amount, but the judgment could not be for dollars in "Montana currency."

There was no agreement to pay until the close of the term of service, February 2, 1872. No liability had accrued under the first cause of action when judgment was rendered. No interest could be claimed under the statute. Acts 1865, 535. There was no allegation that these moneys were withheld by an unreasonable or vexatious delay.

The liability of appellants, under the second and third causes of action rests upon the last clause of appellant's letter of March 9, 1867. This clause was *nudum pactum.* It

was an offer to give, which could not be enforced as a legal liability. It was an offer to make the expenses a charge on the property and business, and created no personal liability. The only method of enforcing them would be by proceedings in equity to subject the property to their payment.

Respondent was discharged: whether for good cause or no makes no difference. He was discharged three months before the year expired. The jury found he was working in Montana under the contract, while he was actually in New York. The jury did not find that respondent was able to perform his part of the contract. Respondent went to New York by no one's authority.

There should have been a demand for currency, and a refusal to pay it. There should have been an allegation of acceptance by respondent of the proposition in the letter of March 9, 1867.

The stipulation, that respondent was to be paid at a certain rate per year, is not an agreement that the salary shall be paid at the end of the year. *Davis* v. *Maxwell*, 12 Metc. 289 ; *McMillan* v. *Vanderlip*, 12 Johns. 165 ; *Jennings* v. *Camp*, 13 id. 94 ; *Reab* v. *Moor*, 19 id. 337. Respondent could not collect any thing on the contract until, by its terms, the time had expired. He could sue for damages for refusing to employ, and not for wages before they became due.

The moneys named in the second and third causes of action were not paid at the instance or request of appellants.

Respondent neglected his duty and violated the orders of his employers and his contract of service. He was on the Missouri river one month, and neglected the business of his employers. Respondent could not delegate to another a personal trust. Respondent removed appellants' mill without authority, and squandered appellants' money in an untested and unimproved district. Respondent brought suits in names of appellants against their wishes. Respondent's letters and reports to appellants show incompetency, deception and fraud.

The court erred in refusing to allow appellants to withdraw their counter-claim. The court erred in refusing to instruct the jury that respondent must prove that he performed work for the whole year in order to recover.

Respondent was obliged to demand his pay in New York before appellants would be liable. The Montana currency was deliverable in New York, and an averment of demand there was essential. 2 Pars. on Cont. 583. Nothing was due respondent until February 2, 1872, or April 1, 1872.

The court erred in refusing to instruct the jury as to what constitutes negligence, and put a wrong construction on the letter of March 9, 1867. *Brown* v. *Huger*, 21 How. Pr. 305; Hilliard's New Trials, 250. The court refused to charge that desertion by respondent of appellants' business was cause for discharge. *Zabriskie* v. *Smith*, 13 N. Y. 338.

G. G. SYMES, S. WORD and H. N. BLAKE, for respondent.

Respondent testified that he worked as superintendent for appellants from April 1, 1867, to April 1, 1868; that he was to receive the salary mentioned in the letter of March 9, 1867, and expenses from New York to Montana, and living expenses in Montana; and that he worked faithfully for appellants. This evidence was not disputed by appellants.

This appeal is taken from an order overruling a motion for a new trial. There was no statement on the motion for a new trial, but the bill of exceptions contained a portion of the evidence. There being no such statement as the statute requires, this court cannot reverse the order overruling the motion for a new trial on the ground that the evidence is insufficient to support the verdict. Civ. Prac. Act, § 194. The weight of all the evidence in the exceptions is in favor of respondent. There is a conflict of evidence, and the court will not reverse the judgment or disturb the verdict. *Oullahan* v. *Starbuck*, 21 Cal. 413; *Wilcoxson* v. *Burton*, 27 id. 232; *Wilkinson* v. *Parrott*, 32 id. 102.

The only questions to be considered are the rulings of the court during the trial. The letter of March 9, 1867, was properly admitted in evidence. It fixed the salary of re-

spondent, and related to the issues tried by the jury. It shows that certain expenses of respondent were to be borne by appellants.

The refusal of the court to allow appellants to withdraw their counter-claim was not error. It is the intention of the law that accounts between litigants shall be settled in the same suit. If parties insist on a counter-claim during the trial, they should not be allowed to withdraw it while the court is charging the jury.

The instructions of the court were applicable to the issues formed by the pleadings and the points relied on by appellants. They fully present the appellant's side of the case. Some of appellant's instructions, that were refused, had been given in substance by the court. It is the duty of a court to give the law applicable to a case in plain, not argumentative, instructions, so that the jury will not be confused.

It was not necessary for respondent to work during the whole year to recover. Appellants prevented him from working a portion of the time, but he was ready and willing to perform services under the contract. Before respondent went to New York, W. D. Wann, agent of appellants, told him he would have to go to get a settlement.

Could the expenses referred to in the letter of March 9, 1867, be made a lien on the property of appellants and enforced against it? It cannot be claimed that appellants are not personally liable, unless there was an express contract that respondent's expenses should not be a personal liability. *Tafts* v. *Plymouth M. Co.*, 14 Allen (Mass.), 407.

The issues of the performance of services by respondent, the reasons for his discharge, his competency, his obedience of appellants' instructions, etc., were decided in favor of respondent by the jury, under the instructions of the court below.

Respondent was to receive $4,000 per year. This was payable at the end of each year. The commencement of this suit was a sufficient demand.

The letters of respondent to appellants show that respond-

ent was very particular and thorough in his reports of every thing he did.

There are no specifications of the particular errors on which appellants rely in any part of the transcript. The whole record shows that the law was substantially given to the jury; that no exceptions were taken which would have changed the result; and there may be a conflict of evidence. The judgment should not be disturbed. *Smith* v. *Harper*, 5 Cal. 329 ; *Dale* v. *Anderson*, 27 id. 250 ; *Kile* v. *Tubbs*, 32 id. 333.

W. F. SANDERS, for appellants, in reply.

The letter of March 9, 1867, shows that certain expenses were to be borne by the joint property and business, and not by appellants. The letter, like a mortgage, makes a debt a charge on property, but creates no personal liability.

Respondent must show that he made truthful reports to appellants to enable him to recover. It was a part of respondent's contract of service.

The withdrawal of the counter-claim stands on the same footing as the right of a party to dismiss a suit where there is no counter-claim, and this can be done before the court has left the case to the jury.

Respondent must remain at or near the business before he can recover wages on the contract. Respondent cannot claim the discharge was valid, and leave, and then claim that the discharge was a nullity and sue for wages. *Virginia & T. A. Co.* v. *County Commissioners Lyon Co.*, 6 Nev. 72.

The salary was not $4,000 each year, or a year, but at the rate of $4,000 per annum.

The errors relied on were properly saved.

WADE, C. J. This is an appeal from the judgment of the court below, and from the order overruling the motion for a new trial, and whatever appears in the bill of exceptions, taken at the trial and allowed by the court, is properly before us for consideration and decision. The suit is for services alleged to have been performed by plaintiff for

defendants, in pursuance of the terms of a written contract between the parties, and the complaint substantially alleges : That in the months of February and March, 1867, the plaintiff was employed by defendants at their special instance and request, as general manager of the mining business and property of the defendants in Montana Territory, for the period of five years from the 2d day of February, 1867, unless the agreement entered into between the plaintiff and defendants should be sooner dissolved or canceled ; that on the 9th day of March, 1867, defendants proposed to pay plaintiff for his services, at the rate of $4,000 per year in Montana currency, allowing greenbacks to be worth 90 cents of the dollar, commencing on the 1st day of April, 1867, which agreement and proposition were made in the city of New York, and accepted and ratified by said plaintiff at the times the same were made ; that the plaintiff, being employed as aforesaid, took charge of the mining business and property of said defendants in said Territory, as general manager thereof, in the month of March, 1867, and that he continued to perform the service of such general manager from that date until the 1st of April, 1868, without any fault or omission of duty on his part ; that said agreement has never been dissolved or canceled ; that the same was in full force and effect from the time the same was made until the 1st day of April, 1868 ; that the value of said $4,000 in Montana currency was $4,444.44, and that plaintiff was entitled to receive that sum for his services aforesaid, and that no part thereof has been paid, although the same was demanded of defendants in the city of New York, in the month of April, 1868.

The second cause of action charges defendants with the sum of $1,100, for so much money paid, laid out and expended for said defendants by said plaintiff, and to and for the use and benefit of defendants, and at their special instance and request, in defraying the expense of plaintiff and his wife in getting from the city of New York to said Territory.

The third cause of action charges defendants with the sum of $600 for so much money paid, laid out and expended

by said plaintiff for said defendants, at their special instance and request, in defraying the living expenses of the plaintiff in said Territory.

The fourth cause of action charges defendants with the sum of $1,000 for money paid, laid out and expended by plaintiff for said defendants, at their special instance and request, in defraying the expense of plaintiff in going from this Territory to the city of New York, and returning therefrom to said Territory.

The answer of the defendants denies that the plaintiff, in the months of February and March, 1867, or at any other time, was employed by the defendants as general manager of the mining business and property of the defendants, in the Territory of Montana, for the period of five years, or for any other period, than from the 1st day of April, 1867, to the 6th day of January, 1868 ; and deny that plaintiff continued to perform such services, or any service for defendants, after said 6th day of January, 1868 ; deny that plaintiff complied in all respects with contract, without any fault or omission of duty on his part ; but, on the contrary, allege that plaintiff, when he entered upon their employment as aforesaid, in consideration of the sum agreed to be paid to him for said services, undertook and agreed that he was competent to discharge the duties of general manager and superintendent of the mining business and property of defendants in said Territory ; that he would devote his entire time and energies in the discharge of such duties ; obey all instructions he should receive from defendants in reference to said business ; make full reports from time to time to the defendants of all matters affecting their interests in and about said business ; not deceive the defendants with reference to any of said business or property. But alleges that said plaintiff, while so employed as aforesaid, was not competent to discharge the duties of said general manager or superintendent of said mining business and property ; did not devote his entire time or energies to the discharge of the duties aforesaid ; did not obey the instructions of the defendants with reference to their business ; did not make

full, nor truthful, reports of said business to said defendants; deceived defendants with reference to their said business and property; was extravagant in the expenditure of defendants' money; insubordinate to their instructions; made to them false reports in and about their said business; bought other mining property in said Territory with defendants' money without their authority; and would not, and did not, comply with said contract of service. Wherefore, the defendants, on the 6th day of January, 1868, discharged plaintiff from said service and employment; and defendants aver payment of $3,000 to plaintiff on account of his services, between the 1st day of April, 1867, to January 1, 1868.

The answer to the second, third and fourth causes of action is a general denial, and in further answering the defendants set up a counter-claim against the plaintiff, for goods sold and delivered to plaintiff at his special instance and request, and for money had and received of defendants, and for money paid, laid out and expended by defendants for plaintiff at his instance and request, and demanding judgment for amount of counter-claim.

The reply of plaintiff denies that he undertook or agreed with defendants that he was competent to discharge the duties of general manager or superintendent as aforesaid; denies that he agreed to obey all instructions of defendants in reference to said business, and denies that he agreed that he would not deceive defendants about said business and property. Said replication also denies that defendants have paid him $3,000, or any other sum, on account of said service, denies that he was ever discharged from said service, denies counter-claim and all the averments thereof, and alleges faithful performance of his duties under said contract.

The plaintiff, to maintain the issues on his part, introduced and read in evidence the following contract:

## "CONTRACT."

" This agreement made this second day of February, in the year one thousand eight hundred and sixty-seven, between

Alexander McAndrew and Samuel Wann, both of the town of Middletown , in the county of Richmond and State of New York, parties of the first part, and Maria Josephine Isaacs, wife of James P. Isaacs, of Montana Territory, party of the second part, and said James P. Isaacs, party of the third part.

"Whereas, the parties hereto of the first and second parts are jointly interested in certain mining property, mill machinery and other property, particularly described in a certain deed thereof bearing date the first day of February, one thousand eight hundred and sixty-seven, made by said parties of the first part to said party of the second part, in the proportion of three-quarters owned by said parties of the first part and one-quarter owned by said party of the second part; and,

"Whereas, the parties of the first part have advanced all the moneys so far expended in purchasing said property, and in the expenses attendant upon and connected therewith, and are to advance such further sums as may be needed in the developing and working of said property ; and,

"Whereas, it is desired and intended that said property shall be managed and worked for the joint account as one property, and that the party of the third part shall be employed as general manager and superintendent of the same in Montana Territory :

"Now, therefore, this agreement witnesseth : That the parties hereto, in consideration of the premises and of the mutual covenants and agreements herein contained, have mutually agreed and covenanted, and by these presents do mutually agree and covenant, each with the other, as follows :

"*First.* That the said entire property, mines, mining interests, mill, machinery, and other property of the said parties of the first and second parts, shall be controlled and managed by said parties of the first part, but for their joint account and upon the terms and in the manner hereafter provided for, and to that end the said party of the second part hath made, constituted and appointed, and by these

presents doth make, constitute and appoint the said parties of the first part her true and lawful attorneys, irrevocable during the continuance of this agreement, for her and in her name, place and stead, to take charge of, manage and control her interest in the property aforesaid and for her and in her name, in their discretion to sell such portions of the property as they may deem best, and good and sufficient deeds therefor to execute, acknowledge and deliver.

" *Second.* That said parties of the first part shall make all advances needful and requisite for the further working or developing of the said property, as in their judgment shall be most expedient.

" *Third.* That all the avails, earnings and profits derived from the said property, or any part thereof, shall be received by the said parties of the first part, and shall be by them applied as follows :

" 1. To the re-imbursement of all moneys which may be expended by them the said parties of the first part in or about the care, management, developing or working of said property, or in any expenses connected therewith.

" 2. After payment of all expenses as above, one-quarter of all net profits resulting from the working of said property, or sales of any part or parts thereof, shall be credited and paid to said party of the second part, and three-fourths part shall be credited to and retained by the said parties of the first part.

*Fourth.* That the said party of the third part shall be employed as general manager of the said mining business and property of said parties of the first and second parts, in Montana Territory, during the continuance of this agreement, at a salary to be agreed upon between him and the said parties of the first part, which salary is to be paid as part of the business expenses connected with said joint property and business.

" *Fifth.* That said party of the third part shall and will, during the continuance of this agreement, faithfully devote

his entire time and energies to the management of said joint property and interest, and the conduct of the said business of mining, and to the promotion of, and care for, the joint interest of said parties of the first and second parts.

"*Sixth.* That this agreement is to remain in full force for five years from the date thereof, unless sooner dissolved or canceled by the parties thereto, and that the terms hereof are to bind the legal representatives of said parties of the first and second parts, as well as said parties.

"*Seventh.* That during the continuance of this agreement, the parties of the first and second parts shall not, and. will not sell, dispose of, transfer, assign or convey their, or any of their, individual interests in the property aforesaid, or any part thereof, but that all sales, or other dispositions of said property, or any part thereof, shall be for the joint account and benefit of said parties of the first and second parts in the proportion of three-fourths to the former and one-fourth to the latter.

"In witness whereof, the parties of these presents have hereunto unchangeably set their hands and seals , the day and year first above written.

> "ALEXANDER McANDEW, [L. S.]
> "SAMUEL WANN,          [L. S.]
> "M. J. ISAACS,          [L. S.]
> "JAMES P. ISAACS.          [L. S.]

" Sealed and delivered in presence of

> "CHARLES NETTLETON.
> "M. GRAHAM.

[Stamp.]

Which agreement is properly acknowledged before Charles Nettleton, Commissioner for the Territory of Montana in New York.

Also a letter from defendants to plaintiff, fixing the rate of compensation to plaintiff under said contract, of which the following is a copy:

"No. 12 PINE STREET, }
"NEW YORK, *March* 9, 1867. }

"J. P. ISAACS, Esq., New York:

"DEAR SIR — In accordance with agreement, dated February 2, 1867, executed between you, Mrs. Isaacs, and ourselves, we propose, in behalf of all parties interested in the Montana mining property, that you should, on your arrival out, take charge of the mining business and of said property as general manager, and that your salary for services to be rendered in that capacity shall be at the rate of four thousand dollars ($4,000) a year in Montana currency, allowing greenbacks to be worth 90 cents of the dollar of said currency, such salary to date from the first day of April next.

"The expenses of yourself and wife in getting out there to be charged to, and be borne by, the joint property and business, and your living expenses there to be in like manner a charge on the business.

"Very respectfully,
"McANDREW & WANN."

This suit was commenced on the 15th day of May, 1869. The contract under which the plaintiff claims pay for one year's service is dated February 2, 1867, the alleged year's service ending April 1, 1868. It will be seen that this contract, by the terms thereof, is to continue in force for five years, unless sooner dissolved or canceled by the parties thereto. This suit was commenced long before the contract had expired, and long before there was, or could have been, a performance thereof by the plaintiff, providing the contract, by its terms, was an entire contract. If the contract is entire in its nature, full performance thereof by the plaintiff is a condition precedent to his right to sue thereon. And if performance by the plaintiff is prevented or made impossible by the action of the defendants, the plaintiff must, at all times during the continuance of the contract, be ready and willing to perform on his part, and he must not place himself in such a situation as to be unable to perform.

If the contract under consideration is an entire contract, that is, if full performance thereof by the plaintiff must be averred and proven before any right of recovery follows, and this contract was, by its terms, to continue for five years, then it could not be contended that this suit, at this time, ought to be maintained.

There are three remedies upon an entire contract, where one of the parties is prevented from performing by the action of the other party.

*First.* He may keep himself ready, willing and able to perform until the contract, by its terms, expires, and then bring suit on the contract itself.

*Second.* He may bring suit upon the *quantum meruit* for what his services are actually worth.

*Third.* He may sue for damages for breach of the contract by the opposite party.

In the present case the plaintiff has chosen to bring his action *upon the contract*, claiming pay for one year's service, and the right to bring this action in this form leads us to a consideration of the contract in question to ascertain whether it is entire or divisible in its character.

The contract provides that the plaintiff *shall* be engaged as general manager of the mining business of defendants *during the continuance of the agreement* (five years), at a salary to be agreed upon between the parties, to be paid as part of the business expenses connected with said property.

The letter above referred to, which forms a part of the agreement and contract, provides that the plaintiff's salary for services to be rendered under said contract shall be at *the rate of four* thousand dollars a year.

The contract does not provide *when* the plaintiff shall receive any pay for his services ; and this important proposition, upon which this case hinges, can only be satisfactorily solved and determined by a resort to the authorities.

" If the contract be for a time certain and the servant leave without cause before the time expires, it has been held in many cases in England and in this country, that he has no

claim for services he has rendered." 2 Pars. on Cont. 36 ; Chit. on Cont. 629–633.

"Nor does it make any difference in this respect whether the wages are estimated at a gross sum, or are to be calculated according to a certain rate per week or month, or are payable at certain stipulated times, provided the servant agree for a definite and whole term ; such an arrangement being entirely consistent with the entirety of the contract." *Davis* v. *Maxwell*, 12 Metc. 286 ; *Winn* v. *Southgate*, 17 Vt. 355.

"In regard to the contract itself which was an agreement to work for the defendant for seven months at $12 per month, we are of opinion it was an entire one, and that the plaintiff having left the defendants' service before the time expired, cannot recover for the partial service performed." 12 Metc. 287 ; *Hutchinson* v. *Wetmore*, 2 Cal. 310.

"The stipulation of monthly pay does not disjoin the contract, it is adopted only as the means of ascertaining the compensation." *McMillen* v. *Vanderlip*, 12 Johns. 165 ; *Rice* v. *The Dwight Man. Co.*, 2 Cush. 80.

"Where the plaintiff agreed to work for the defendant for $104, or $13 per month. *Held*, that the contract was entire, and that the work for the whole period was a condition precedent to be performed before the plaintiff could sue for his hire." *Reaf* v. *Moor*, 19 Johns. 337 ; *Larkin* v. *Burk*, 11 Ohio St. 561 ; *Lantry* v. *Parks*, 8 Cow. 63.

These cases, and numerous others that might be cited, seem to settle the doctrine, that where the contract is for a time certain at a fixed price per day, per month, or year, and the servant leaves before the stipulated time expires, he has no claim on the contract for the services rendered.

If he is compelled to leave the service by the action of his employer, the rule is not changed. He must then resort to a suit for damages, or to the *quantum meruit* for what his services are actually worth, or he may stand at his post ready to perform until the contract expires, and bring his suit on the contract.

Applying these principles to the case before us, and its

solution is comparatively easy and the right clear. This was a contract for five years' service, and the sum to be paid therefor was fixed at the rate of $4,000 per year, to be paid as part of the business expenses of the enterprise, but the time of payment is not fixed, and in view of the authorities above referred to, we must hold that this is an entire contract, and that work for the whole period was a condition precedent to be performed by the plaintiff before he could sue for his hire.

There is no time fixed for payment in this contract, and the law fixes the time, and that time is the period when the service is performed. It is one agreement, one contract, and performance must be shown before payment can be enforced.

We cannot make contracts for parties, and however convenient pay by the week, month, or year might be, such payments cannot be enforced unless the parties so promise and agree.

Suppose A contracts with B to labor for him for one year at the rate of $1 per day, can it be contended that at the close of each day's service A has the right to bring a suit on such contract to enforce payment for his day's labor? This would not be claimed, and yet the contract under consideration is precisely the same as the one supposed, only on a larger scale.

We do not intend to say that the plaintiff in the present case is without remedy; we only say he has mistaken the form of action he should have brought. If he has been wrongfully prevented from performing his contract by the defendants, he can sue for damages, and, upon the *quantum meruit*, for the value of the labor really performed; and at the end of the five years, if he has not forfeited his right thereto, he may bring his action on the contract for his services for the whole period.

II. The next question arising in the case is as to the sufficiency and competency of the evidence to support the second, third and fourth counts of the complaint. These counts allege that the defendants are indebted to the plaintiff for money paid, laid out and expended for the defend-

ants by the plaintiff, for traveling and living expenses, at their special instance and request. The only evidence to support these averments, as shown by the record, is the last clause of the letter above referred to, which is as follows:

"The expenses of yourself and wife in getting out there to be charged to and borne by the joint property and business, and your living expenses there to be in like manner a charge on the business."

To the introduction of this evidence the defendants objected, upon the ground of irrelevancy and incompetency. The objection was overruled and the defendants excepted.

The language of this letter does not seem capable of a double meaning or of a doubtful construction. The parties were about to embark in a business enterprise, the success of which was uncertain. The pay of the managing agent was secured, and did not depend upon the success of the undertaking. A proposition was made that the traveling expenses of the agent in getting to the territory, and his living expenses while there should be borne by the business. The agent accepts, and thereby undertakes to perform the duties of his employment, and, in so doing, so far as these expenses are concerned, runs the hazard of making the business a success. This offer to pay expenses out of the business was designed to be a further inducement to the agent to achieve success. It was designed to give him an interest in the business to such an extent as that his expenses should depend upon the manner he performed his duties. The traveling and living expenses were to be a charge on the business and the property; that is to say, they were a lien thereon, as between the parties, to be paid from the proceeds thereof. This claim is in the nature of a mortgage. It is against the property and the business, and creates no personal liability.

Can it be successfully claimed that this offer of the defendants, that the traveling and living expenses of the plaintiff might be a charge upon the business and property of the enterprise, creates a personal liability to such an extent that the defendants can be proceeded against in the

first instance, before any attempt is made to exhaust the remedy against the property itself? We think not, and we are therefore of opinion that the demand of the plaintiff against defendants in his second, third and fourth causes of action, for money paid, laid out and expended for traveling and living expenses, is not supported by this evidence, and that the objection to its introduction was improperly overruled.

III. Looking at the verdict of the jury in this case, we ascertain that they find for the plaintiff upon the second and third causes of action in the complaint, and that they compute interest therefrom, from the time the causes of action accrued to the time of trial. It will be remembered that these causes of action are for money paid, laid out and expended by the plaintiff for the defendants, at their special instance and request, and it is contended that the statute does not contemplate the payment of interest upon demands of this nature.

Interest is a creature of the statute, and the rate thereof differs in different States. The statute of Montana (Laws of 1865, p. 535) provides, that creditors shall be allowed to collect and receive interest for all moneys after they become due, on any bond, bill, promissory note or other instrument of writing; on any judgment; also, upon money lent, or money due upon settlement of amounts; upon money received to the use of another and retained without the owner's knowledge, and on money withheld by an unreasonable and vexatious delay. The statute does not seem to contemplate the payment of interest upon money paid, laid out and expended for another, unless it could be claimed on the ground of unreasonable and vexatious delay; and, in such a case, the claim would have to be supported by the necessary averments and proof.

However reasonable the claim for interest may be in the present case, we must administer the law as we find it, and cannot take upon ourselves the duties of the legislature.

IV. A further examination of the verdict of the jury discloses the fact that the jury found that the plaintiff had

performed for the defendants, under said contract, the services claimed in his complaint, that is, one year's service. The evidence shows that the plaintiff commenced work on the first of April, 1867; that, during the summer of that season, he was absent from defendant's business and employment for more than one month, in pursuit of his own business; that, on the 7th of January, 1868, he was discharged from the defendants' employment, and that, on the 17th day of March, 1868, and before his year's service had expired, and of his own motion and without the knowledge of defendants, he left the Territory of Montana and went to the city of New York, and how the jury could find that the plaintiff, from the first day of April, 1867, to the first day of April, 1868, was in this Territory, working for defendants, under this contract, we are unable to see. We would not disturb the verdict of a jury where there is evidence to support it, even though we were satisfied that the verdict was against the weight of evidence, but in this case it seems to be admitted that the plaintiff left the Territory before the year had expired, and for a portion of the time that the jury say he was here at work under the contract, he was in fact in New York city attending to his own affairs.

This finding of the jury is against the evidence.

V. This contract was made in New York, but to be performed in Montana. It is silent as to the place of payment, and as to the rate of interest in case payment is delayed. The question then occurs, where payment should be demanded and the rate of interest that can be claimed if payment is delayed or refused.

This is a naked promise, without any special condition as to the place of payment, and payment must be demanded of the maker where he is or at his domicile. 2 Pars. on Cont. 583.

So that in the case before us, it was necessary to aver a demand of payment, and if the defendants were then residing in New York city, or had their domicile there, it was necessary to prove demand at that place. And it would seem to result from the authorities, that if payment is de-

layed or refused after demand made, the party may collect interest, according to the rate of interest in the county where the contract is performed, if by the nature of the contract interest is recoverable by the laws of that country.

The creditor is supposed to borrow money where he is, and in the country where he is performing the contract, to supply the deficiency occasioned by the failure to pay on the contract, and it would be but justice to allow him to recover on the contract the same rate of interest he is compelled to pay by reason of a breach thereof, and this, upon the ground that where a contract is made in one place to be performed in another, the law of either place may be applied.

VI. James P. Isaacs, the plaintiff in this action, is the husband of Maria Josephine Isaacs, one of the defendants. This is shown by the contract herein set forth. The covenants and undertakings of that contract are between husband and wife, directly without the intervention of a trustee. That is to say, the husband undertakes and promises, for a consideration, to work for his wife and two other persons for the period of five years, the wife and her co-contractors failing to pay, according to the terms of the agreement, as the husband alleges, he brings a suit against his wife and the other contractors, and recovers a judgment against them in the court below, and but for the appeal herein, the husband could have had an execution against his wife's property to satisfy the judgment and costs. Of course such a contract, and such a judgment, as between husband and wife, would be void at common law, but how far the rights of the parties are modified by statute, if at all, and whether the statutes of New York State or of Montana are to control, we are not called upon to decide, as the question is not made in the record before us.

It is proper, however, to observe that, if any statute authorizes such a contract as the one under consideration as between husband and wife, and a suit by the husband against his wife to recover of her the amount due thereon, the strict letter of the statute must be followed in the institution and

progress of such a suit, and it seems impossible that an action of the kind could be commenced and carried forward to judgment and execution without disclosing in the pleadings the true relation of the parties to the suit.

VII. It is assigned for error that the court refused to permit the defendants to withdraw their counter-claim as set up and described in the answer of defendants. The record shows that before the court had finished charging the jury, and after the testimony had closed, the defendants moved the court for leave to withdraw their counter-claim from the consideration of the jury, and as to said counter-claim to dismiss the same, which motion was overruled.

The effect of such a motion is simply an application to amend the pleading, and over such amendments the court should exercise a sound discretion, and it has power to grant or refuse amendments and upon such terms as it thinks just and proper.

We do not think the granting or refusal of amendments can properly be assigned for error except in cases where manifest injustice is done, and this court will not consider an alleged error of this kind unless it is made apparent that the rights of the parties are being infringed.

Judgment reversed and cause remanded.

*New trial granted.*