THOMAS MOORE, Respondent, *v.* HENRY A. TAYLOR AND JOSEPH C. TONE, Appellants.

SAME, Respondent, *v.* SAME, Appellants.

*Contract for the construction of a railroad — right of the person, contracting with the company, to pay claims for services filed by laborers against a second sub-contractor, and apply the same in payment of the amount due to a first sub-contractor to whom such person has sub-let the contract — when he does not lose this right by taking an assignment of the claims filed — right to recover, as damages for a breach of a contract, profits which would have been received if the contract had been completed — such damages are not recoverable where the breach complained of is simply a failure to pay an installment of money due by the terms of the contract.*

This action was brought by the plaintiff, a sub-contractor, to recover for work done and materials furnished prior to July 25, 1882, under an agreement with the defendants, who were contractors for the construction of the Ontario Belt Railway, by which the plaintiff agreed to construct certain portions of the road-bed of the railroad company, at prices specified in the contract, and which were payable in cash, bonds and stock of the company in the proportion and at the times therein provided. The referee, before whom the action was tried, found that for the work done and materials furnished by the plaintiff under the agreement, prior to July 25, 1882, he was entitled to recover the sum of $12,854, for which sum and interest thereon he directed a judgment.

The referee also found that the plaintiff sub-let the work of construction to Moore & Sullivan, who entered upon the performance of the work ; that in the latter part of July the laborers on the work became clamorous for their pay and insubordinate, refusing to work longer unless paid, and that they did quit on or before July twenty-ninth ; that Moore & Sullivan, with the plaintiff's assent, on that day requested the defendants to pay the men or to furnish the money for that purpose, and proposed to give them security that the money should be paid to the laborers in case they furnished it ; that after the defendants had refused to do this, the plaintiff made a demand on the defendants that payment be made to him.

That on that day, and during several following days, the defendants procured a large number of the laborers to make and file their claims for unpaid services against the railroad company, amounting in all to about $6,940.10, under chapter 669 of 1871, and after the notices of such claims were handed to the person on whom the service was intended to be made, the claims were assigned to the defendants by the laborers, and the defendants paid to them respectively

the amounts of their claims ; that none of these claims have been enforced, and no attempt has been made to collect them by action against the company, but that the defendants still hold them as assignees ; that these claims are or purport to be against Moore & Sullivan, and not the plaintiff.

*Held,* that as it was admitted that the defendants entered into a contract with the company for the construction of the road, the property of the company could be charged on default of the contractors, or sub-contractors, to pay the laborers.

That as the company would be entitled to compel the defendants to reimburse it for any amount which it might be compelled to pay on account of such claims, the defendants had such an interest in seeing that such claims were paid by their immediate, or any subsequent, sub contractors, as required the payment so made by them to be treated as made for the plaintiff, and authorized the defendants to apply the amount thereof upon their indebtedness to him.

That, in view of all the circumstances of the case, the taking of the assignments of the claims by the defendants could not be treated as an obstacle to the application of the amount of them in reduction of the recovery for the work done, on account of which the money was advanced.

In a second action tried before the same referee, brought to recover for work done after July twenty-fifth, and damages for a breach of the contract on the part of the defendants, the referee found that after August 1, 1882, the plaintiff demanded of the defendant the payment of the money and bonds due him on the contract, and that they refused to pay the same, or any part thereof, except the sum of $6,000, which they offered to pay to the plaintiff on his agreeing that it should be paid, under their direction, to the laborers; that the apportional payments provided for in the contract were intended by the parties to put the plaintiff in funds to pay his laborers and the expenses of doing said work and, therefore, became a very essential part of the contract; that on or about August twelfth the plaintiff abandoned the construction of the railroad, for the reason that the defendants refused to perform their part of said contract, in refusing to pay the said cash and bonds due on August first for work done up to July twenty-fifth, thus depriving him of the means to pay off his laborers and induce them to continue the work; that the plaintiff was entitled to recover whatever damages he had sustained by reason of the defendants' breach of the contract in the particulars stated.

The referee allowed as damages the remainder obtained by deducting from the sum of the amount to be paid in cash the par value of the bonds and stock to be delivered and ten per cent of these amounts added thereto, the amount of the payments made and the estimated cost of completing the work.

*Held,* that a claim made by the defendants that a right reserved by the contract—to the effect that in the event they should for any reason fail to continue the work and should notify the plaintiff to suspend or cease operations, a measurement should be made of and payment be made for the work done at specified rates — operated to defeat the right of the plaintiff to recover damages, or to claim anything otherwise than what was provided for as compensation by the

contract, could not be sustained, as the facts proved did not bring the case within this provision of the contract.

That it was error to allow the plaintiff to recover, as damages: the prospective profits which the completion of the performance of his contract would have given him.

The right to such relief does not arise out of every breach of a contract for the performance of services, but is dependent upon that which operates as a denial of the right to proceed and complete the work contracted for.

Mere default in payment of an installment, when it becomes due, is not a denial of the right of the contractor to continue in the performance of the services; and although it will permit him to abandon the work and recover for what has already been done under it, it will not enable him to recover the damages which the law would give in case of a refusal to let him proceed in the performance of the contract.

APPEALS from judgments, entered upon the reports of a referee.

On June 7, 1882, the defendants, being contractors with the Ontario Belt Railway for the construction of its road, entered into an agreement with the plaintiff by which the plaintiff agreed to do the work of graduation, bridging, masonry, track-laying, track-surfacing and distribution of ties, on the Rochester and Ontario Belt Railway, commencing at station (O), on the bluff of the Genesee river; thence on pleasure line to about station 67, at junction with the permanent line at station 380; thence along it to about station 616, at the shore of Lake Ontario; and in addition three sidings, aggregating about 2,600 feet of track, switches and frogs, and a branch of about 4,000 feet; the surfacing and track-laying in all about seven miles; the clearing and grubbing estimated about five acres; earth assumed to amount to 81,000 yards; rock, 1,000 yards; bridging, 30,000 feet, board measure; masonry, 200 cubic yards. The prices: earth, per cubic yard, twenty-five cents cash, five cents in bonds and five cents in stock; rock, per cubic yard, one dollar and twenty cents cash, five cents in bonds and five cents in stock; trestle bridging, per 1,000 feet, board measure, fifty dollars in cash, two dollars in bonds and two dollars in stock; dry masonry, per cubic yard, two dollars and fifty cents cash, fifty cents in bonds and fifty cents in stock; track-laying, per mile, $250 cash, ten dollars in bonds and ten dollars in stock; track and sidings surfacing, $400 cash, twenty dollars in bonds and twenty dollars in stock; switches and frogs laid, each couple, $100 cash, five dollars in bonds and five dollars in stock; clearing and

grubbing, per acre, forty dollars cash, three dollars in bonds and three dollars in stock. (The bonds and stock to be taken at seventy-five per cent of their par value.) Any extra work outside the agreement to be paid for monthly, in cash, with ten per cent added for superintendence, use of men and tools. But, notwithstanding these estimates and rates, the "bulk-price" to be paid to the plaintiff for the work is $28,500 cash, $4,500 in bonds and $4,500 in stock, at seventy-five per cent of their par value, equaling $6,000 of each, at par value. Payments to be made on account of the work as often as every two weeks, and payment of cash and bonds on or before August 1, 1882, for the total work done up to July twenty-fifth, and final payment in cash, bonds and stock, found to be due, within five days after the completion of the work. In the event that the defendants should fail to continue the work, and should notify the plaintiff to suspend operations, it was provided that the latter should be paid certain specified rates for the work done up to that time, and in addition, as liquidated damages, $1,000, if he shall not then have excavated as much as 20,000 yards of material, and $500 if he shall then have excavated more than 20,000 yards. And if it shall be determined to construct only the railroad from the junction at station three hundred and eighty from main line, and to abandon the pleasure line construction, from station O to station sixty-seven, the total payments shall be reduced by four thousand dollars cash, one thousand dollars bonds, at par, and one thousand dollars stock, at par, making the total payment under the contract aggregate twenty-four thousand five hundred dollars cash, five thousand dollars bonds, at par, and five thousand dollars stock, at par.

The plaintiff entered upon the performance of the contract and continued the work until about the 1st day of August, 1882, when he substantially ceased and shortly thereafter abandoned the work uncompleted.

The action number one was commenced August 4, 1882, to recover for work done up to July 25, 1882, and the plaintiff recovered $12,854 and interest, making together $14,897.78.

Action number two was brought August 17, 1882, and the recovery was $15,988.37, and interest $2,512.73, making $18,501.10. This was made up of some work found to have been done after July twenty-fifth, and damages for breach, on the part of the

defendant, of the contract; the larger part of the amount of the recovery was for such damages.

The referee found that up to July 25, 1882, the work done and materials furnished under the contract were :

43,000 yards earth excavation, 142 yards rock excavation, one-tenth mile track laid, eight acres cleared and grubbed, thirty yards dry masonry, 25,300 feet timber, extra work................ $2,727 27
And ten per cent added...................... 272 73

Making altogether, at the contract prices....... $17,854 00
And deducting payment made July 10, 1882........ 5,000 00

Leaves balance of......................... $12,854 00
Which, with interest from August 5, 1882.......... 2,043 78

Makes ................................... $14,897 78

For which he directed judgment in action number one. That the whole amount of work done and material furnished by the plaintiff under the contact were 46,754 yards of earth excavation, one-twentieth mile of track surfacing, and extra work $3,947.60, and in other respects the amount of work was not increased any after the twenty-fifth of July, thus producing, subsequent to that date, 46,704—43,000 =3,704 yards earth excavation; one-twentieth mile of surfacing, and extra work $3,947,60—$2,727.27=$1,220.33, to which add ten per cent, $122.03.

The referee also found that after the 1st day of August, 1882, the plaintiff demanded of the defendants the payment of the money and bonds due him on the contract and they "refused to pay the same, or any part thereof, except the sum of six thousand dollars, which the defendants offered to pay to plaintiff on condition that plaintiff would sign a receipt therefor embodying a condition that said six thousand dollars should be paid out under the direction of the defendants to the laborers for work they had done on said road as shown by said pay-roll, which plaintiff refused to sign and defendants refused to pay." That the apportional payments provided for in the contract "were intended by the parties to put the plaintiff in funds to pay his laborers and expenses of doing

said work, and, therefore, became a very essential part of the contract." That on or about the 12th day of August, 1882, the plaintiff abandoned the construction of the railroad and the further work necessary to complete it, "for the reason that the defendants refused to perform their part of said contract in refusing to pay the said cash and bonds due on the 1st day of August, 1882, for work done up to July 25, 1882, * * * thus depriving him of the means to pay off his laborers and procure their continuance at work." And as matter of law the referee determined that the refusal of the defendants to make such payment was a violation and breach of the contract, "which absolved the plaintiff from further continuing" the work under the contract, and that the plaintiff has the "right to recover whatever damages he has sustained by reason of defendants' breach of said contract in the particular stated."

The referee found that the expense of completing the work, as the plaintiff left it, was $8,000, and proceeds to make the statement that the full price to be paid is:

| | | |
|---|---:|---:|
| Cash ............................................. | $28,500 | 00 |
| In bonds, $4,500; in stock, $4,500.................. | 9,000 | 00 |
| Extra work, with ten per cent added............... | 4,342 | 37 |
| Making....................................... | $41,842 | 37 |

| | | | |
|---|---:|---:|---:|
| And deducting amount recovered in action number one........................ | $12,854 | 00 | |
| The payment made July 10, 1882........ | 5,000 | 00 | |
| The cost of completion of the work..... | 8,000 | 00 | |
| | | | 25,854 00 |
| Leaving a balance of......................... | | | $15,988 37 |

And concluded that the plaintiff is entitled to recover in action number two that sum, with interest added, making $18,501.10. The defendants excepted to the several conclusions of fact and law of the referee and appealed.

*McNaughton & Olmsted* and *Frank R. Lawrence,* for the appellants.

*J. & Q. Van Voorhis,* for the respondent.

BRADLEY, J.:

There was some controversy on the trial in respect to the quantity of work performed under the contract. The accuracy of the estimates presented by the evidence of the respective parties was the subject of fair criticism. Those furnished on the part of the plaintiff were made without measurements, and those on the part of the defendants were estimates aided by partial measurements only. Thus was presented an apparent conflict in the evidence. No actual measurements or estimates were made by the defendants or their engineers, or those of the railway company prior to August first, of the work done up to July twenty-fifth, and there is some evidence tending to prove that then and thereafter there were difficulties in the way of making accurate measurements or estimates of the work done, occasioned by various causes, for which the plaintiff was not responsible, and that the measurements made on the part of the defendants and estimates founded upon them were not necessarily accurate; that the plaintiff himself and another engaged in the work were civil engineers, and that they made estimates with knowledge and observation of the work as it progressed. The estimates so made by them were sufficient in extent to cover the amount of work found by the referee. The evidence, as a whole, in this respect presented a question of fact, and we cannot say, in the light in which he was permitted to view the evidence as it was adduced, that his finding is so against the weight of evidence as to justify the disturbance of his finding. We think his conclusion, as to the quantity of work done, was permitted by the evidence.

There is not a very clearly defined division of the work into that. done before and that done after the 25th July, 1882, but there is some evidence on the subject, which enabled the referee to make the severance and to support his conclusion in that respect.

The defendants allege the abandonment by the plaintiff of the work which he undertook to perform under the contract, and that a large number of persons gave notice to the railway company of their claims for labor done, and filed liens against the company for materials furnished and used in the work of construction under the contract in question; that the defendants paid such claims, amounting to $6,940.10, and took assignments. They sought to charge

the amounts so paid against the plaintiff as counter-claims. The referee did not allow to the defendants the sums so paid, but found that the plaintiff sub-let the work of construction, except the trestle bridge and the pile bridge work, to Moore & Sullivan, who entered upon the performance of the work; that in the latter part of July the laborers on the work became clamorous for their pay and insubordinate, refusing to work longer unless paid, and that they did quit on or before July twenty-ninth; that Moore & Sullivan, with plaintiff's assent, on that day requested the defendants to pay the men, or to furnish the money for that purpose, and proposed to give the defendants security that the money should be paid to the laborers in case they furnished it, which the defendants refused to do, after which the plaintiff made the demand that payment be made to him; that on July twenty-ninth, and during several following days, the defendants procured a large number of the laborers to make and file their claims for unpaid services against the railroad company, amounting in all to about $6,940.10, under chapter 669 of Laws of 1871, and after the notices of such claims were handed to the person on whom the service was intended, the claims were assigned to the defendants by the laborers, and the defendants paid to them, respectively, the amounts of their claims; that none of these claims have been enforced, and no attempt has been made to collect them by action against the company, but that the defendants still hold them, as assignees; that these claims are, or purport to be, against Moore & Sullivan, and not the plaintiff. And the referee determined that these alleged counter-claims were not demands against the plaintiff; that as against the railroad company they ceased to be enforceable before the answer in this action was served; that the defendants hold them, as assignees, simply against Moore & Sullivan, and that the condition on which the defendants offered to pay the $6,000 to the plaintiff was one they had no right to require.

There was no specific contract between the railroad company and the defendants produced or proved upon the trial, but it appeared incidentally, in various ways, that they were contractors with the company for the construction of the road, and it was evidently assumed upon the trial that they had such relation to it. Their privity by contract was with the plaintiff only; and assuming that

the latter had by contract sub-let a portion of the work to Moore & Sullivan, they were accountable directly to the plaintiff only for the performance of their contract, and they were primarily liable for the labor and materials obtained by and furnished to them by their request. But the work being done pursuant to a contract originally made with the railroad company, it and its property could be charged on default of the contractors, or sub-contractors, to pay the laborers, etc. (Laws of 1850, chap. 140, § 12, as amended by Laws of 1871, chap. 669, § 2; Laws 1875, chap. 392; Laws 1870, chap. 529.) And in the event the company should be required to pay such claims, it might require reimbursement from the party with whom it had contracted to do the work out of which they arose. As a consequence the party taking such contract would have an interest in seeing to it that such claims were paid by his immediate or any subsequent sub-contractor. And the obligation is implied, if not expressed, that such succeeding contractor will protect the party from whom he takes such relation by contract to perform the work, or any part of it, embraced in the original contract with the company, against such claims and liabilities by him incurred. The defendants seem to have been apprehensive that the money might not be applied in payment of the claims of the character before mentioned and, therefore, required assurance that it should be so appropriated. The plaintiff was unwilling to give a receipt for the money containing such a condition, and the $6,000 which the defendants were then ready to pay was withheld from the plaintiff and defendants proceeded to pay the laborers. In aid of this Moore & Sullivan furnished to the defendants' agent the pay-roll, and Sullivan advised such agent that he had sent word to their time-keeper to meet him at a place named so that payment could be made to the men, and such was the place where the men were paid; and the referee has found that Moore & Sullivan, with plaintiff's assent, requested the defendants to pay the men or to furnish the money for such purpose. By making such payment, with the assent of the plaintiff and Moore & Sullivan, the liability to them to that extent of the plaintiff would be discharged and the payment would be deemed made by the defendants for the plaintiff; and in that view there might be no difficulty in charging the latter with the amount if the defendants had not taken assignments of the claims

for which they advanced the money to pay. By reason of taking such assignments it is contended that Moore & Sullivan remain liable to the defendants upon the claims, and, therefore, they cannot be asserted in this action against the plaintiff, treating the primary liability as that of Moore & Sullivan, only, to the men; that is so, unless the peculiar situation and relation of the parties and the right of the claimants to charge the company, and that of the latter to seek reimbursement from the defendants, may be considered and given effect to afford the relief sought by them here.

The proceeding attending the act of payment, of having notices served upon the engineer of the company under the statute, and taking assignments, was evidently taken as a matter of precaution, so that the payments might be deemed as made to discharge the company and its property from a liability to pay, and thus protect themselves from liability to it. And while the apparent effect of the assignments was to vest in the defendants the title to the claims as against the parties primarily and personally liable to pay them, the purpose evidently was to take such title only as a means of making more effectual their purpose to apply the moneys, so advanced, upon the amount of compensation which they, by their contract, had agreed to pay the plaintiff for the work of construction of the railroad, and not with any view to create a liability of any other party to them for the amount so paid. They in this may have done, and probably did do, more than was necessary to put themselves in a position to charge the plaintiff with the payment so made, although the question of voluntary payment otherwise might have been raised. (*Senear* v. *Woods*, 74 N. Y., 615.) The question presented here is not without some difficulty, but we think these payments should, and may, be allowed to the defendants in this action number one. Proceedings were taken to charge the company, and it is not important what the inducement was to cause it, if it was legally done. This afforded to the defendants the right to step in and protect themselves by relieving the company. If they had not done this the right of the company would arise to pay and seek relief from the defendants and they, in turn, to charge the plaintiff, and if Moore & Sullivan, as his subcontractors, were first liable to pay, he could require allowance by, or reimbursement from, them to him. This circuity of action could result

in no advantage to any party, and would, in practical effect, finally accomplish the application of the amount involved, upon and in payment to that extent of the contracted compensation for the work. By charging this against the plaintiff he is relieved from so much of his liability to Moore & Sullivan, for their work. The taking the assignment, if an excessive act, was deemed a precautionary one to protect the defendants in making the payments, and, in view of the circumstances, cannot well be treated as an obstacle to the application of the amount of them in reduction of the recovery for the work done on account of which the money was advanced. The fact (if so) that because no action was commenced against the company to recover the claims, the right to do so was barred before the defendants answered in this action, is not important. The payment was made to relieve the company when the right to charge it existed, and after the preliminary steps had been taken which might result in that effect. The defendants had no right to maintain any action against the company on account of such claims. As between it and them, the primary liability was with the defendants, and as to the company, the workmen were deemed paid by this act of the defendants, in any view that could be taken of the assignments.

This action is brought upon the contract between the plaintiff and defendants to recover for this work, and as between them it was deemed done by the plaintiff in performance of such contract. It was on account of this work that such payments were made, and they were made with the consent of Moore & Sullivan, who were in some manner acting through or under the plaintiff in the performance of the contract between the latter and the defendants. We think the amount of these payments so made by the defendants properly should and can be allowed to the defendants by way of abatement of the plaintiff's recovery.

The evidence about fares, etc., of the men, said to have been paid by Moore & Sullivan, is somewhat indefinite. Nothing appeared on the pay-rolls in that respect. They say they informed the defendants' agent that deduction should be made on that account from the moneys earned by the laborers, which he denies. Moore & Sullivan, knowing that the defendants were proceeding to pay the men, and consenting to it, gave no information to enable them to

make such deduction or to attempt to do it. And it does not appear that any arrangement had been made with the men by which they had become chargeable with any amount paid for their fares, etc. And Charles K. Moore adds to the effect that they intended to deduct out of the last payment; that if they did it before then it would have created some disturbance, and that he did not know that this was to be the last pay-roll. There is no finding on this subject, and in view of the evidence we are unable to determine that the defendants were required to make the deduction at the time of payment, or that they paid the men more than they were required to pay to discharge their claims for the work they had done. The correctness in the amount of the claims so paid is not questioned.

It is contended on the part of the defendants that the plaintiff, without cause, abandoned the work before full performance of his contract, and that such fact should go in defense of action number one, as the provision of the contract for intermediate payments must be deemed conditional and dependent upon its complete performance. It is true that the agreement to pay in installments from time to time as the work progressed, rates of prices for it founded upon estimates was so far conditional that the payments should not exceed in amount the bulk price to be paid for the entire work, yet, inside of that, the plaintiff had the right to recover the installments provided for on performance, to the time and extent required by the contract, to enable him to demand payment of them, subject only to the right of the defendants to allege and establish, by way of abatement, such damages as they may have sustained by any subsequent breach of the contract on his part, which is the extent of the defense that could be made, founded upon such alleged abandonment. (*Sickels* v. *Pattison*, 14 Wend., 257; *Snook* v. *Fries*, 19 Barb., 313; *Tipton* v. *Feitner*, 20 N. Y., 423.) No facts are found, and none necessarily established by the evidence, which require the consideration in action number one, of the question of the alleged abandonment by the plaintiff or any further question in that action.

But in action number two such abandonment, its cause and effect, have some importance. The referee finds, and it is assumed here, that the defendants refused to pay to the plaintiff, on the 1st day of

August, 1882, the sum he was then entitled to demand and receive for work done up to July twenty-fifth, and that on or about the twelfth day of August the plaintiff abandoned the work for the reason that the defendants refused to pay the amount due on the first of that month.

The important question arising upon this state of facts is whether the plaintiff, in consequence of this breach of the contract, was entitled to recover, by way of damages, prospective profits or such profits as would result to him from a complete performance of the contract. The referee found that by this refusal to pay the plaintiff he was deprived of " the means to pay off his laborers, and procure their continuance at work." And, as conclusion of law, adds that such refusal was a violation and breach of the contract on the part of the defendants, which absolved the plaintiff from further performance ; that he had the right to abandon the work and recover whatever damages he had sustained by reason of such breach, and then proceeds to award him as such damages the difference between the contract-price and the estimated cost of the unperformed work of the contract. This was the corrrect rule for the measurement of damages if the plaintiff was, by the defendants, prevented from proceeding to complete performance, unless there was something in the contract to defeat the application of that rule. (*Masterton* v. *The Mayor*, 7 Hill., 61.) It is contended by the defendants' counsel that the right reserved to the defendants by the provision of the contract, to the effect that in the event they should, for any reason, fail to continue the work, and should notify the plaintiff to suspend or cease operations, a measurement should be made of, and payment made for, the work done at specified rates, operated to defeat the right of the plaintiff to recover damages, or to claim anything otherwise than is provided for as compensation by the contract. That provision evidently had reference to a suspension or discontinuance of the work by the defendants for some cause which might arise. They had no purpose to discontinue the work of construction. They urged the plaintiff to proceed, and, on his refusal to do so, they caused the work by other means to go on to completion.

The situation did not come within the provision last referred to of the contract. (*Danolds* v. *The State*, 89 N. Y., 36, 43.)

The provision that in case it should be determined "to abandon the pleasure line construction, from station O to station sixty-seven, * * * the total payments shall be reduced by four thousand dollars cash, one thousand dollars bonds, at par, and one thousand dollars stock, at par, making the total payments under the contract aggregate twenty-four thousand five hundred dollars cash, five thousand dollars bonds, at par, and five thousand dollars stock, at par," was made effectual by abandonment of construction of that branch of the line of road, as appears by the uncontradicted evidence of the plaintiff, which should, as against him, be treated as controlling the disposition of that question. If this fact had been observed and adopted by the referee, his estimation of the damages would have been $5,500 less than the amount by him awarded to the plaintiff. It appears that the case contains all the evidence which, in this court, presents the question of fact upon the evidence, although no request was made to find, and no finding made by the referee in that respect.

The more serious inquiry remains and is, whether, in any view which may be taken of the evidence, the plaintiff was permitted to recover, as damages, the prospective profits which the completion of performance by him of his contract would have given him? The right to such relief does not arise out of every breach of a contract for the performance of services, but is dependent upon that which operates as a denial of the right to proceed to completion of the work contracted for. Mere default in payment of an installment, when it becomes due, is not a denial of the right of the contractor to continue in the performance of the service, and although it may be a breach which would permit him to abandon the work, and recover for that already done, it would not enable him to recover the damages which the law would give for refusal to let him proceed in performance of the contract.

There was no obstruction put in the way of such performance, other than the effect of the refusal to pay the installment due the first of August. The referee has found that the provision for payment, as the work progressed, "was a very essential condition, bearing directly upon the performance of the contract by the plaintiff," and that Moore & Sullivan were "unable to go on with the same, in consequence solely of defendants' refusal to pay the moneys

due, according to their contract." There being nothing in the contract declaring the effect of failure to make any such payment, the question is one of the legal consequence of such default. Our attention is called to no case, yet, holding that a. breach of a stipulation to pay can be treated, in legal effect, as a denial of the right to proceed, in the performance of a contract, to perform service to completion by the other party, or as creating liability for a right to recover prospective profits, by way of damages, as a consequence. The failure to pay gives an immediate remedy, by action, to recover the stipulated amount, and this is not inconsistent with the right to continue to go forward with the work. The cause which permits the recovery of such damages rests upon a rule of law, having some degree of certainty, and is founded in the fact that the one party is prevented by the act of the other from realizing the benefit which the contract furnishes, and he is, therefore, entitled to recover the value of the stipulation, or covenant he has taken, of him who defeats such right. Such value is the amount of profits to result from performance.

An agreement to make payment is generally an essential one, and the consequences of default in payment may, in fact, be more or less prejudicial, according to circumstances, but in legal contemplation they are the same. The pecuniary condition and responsibility of the parties have no bearing upon this question. The rights at law flowing from or produced by a breach of contract arise at once from it and will support an action. If default in payment alone would afford a remedy as for exclusion from further performance, the right of action and of recovery of the entire value of the contract would immediately follow failure to pay, although it arose from mere temporary want of readiness to make payment. In this case the legal right of the plaintiff to proceed in the performance of the contract was not affected by the default of the defendants. But it is said that the defendants sought to and did embarrass the plaintiff by inciting the laborers to insist upon payment fortnightly, when otherwise they would have been content to take their pay monthly. There is no finding on that subject in this action number two to that effect, and in view of the evidence there is no occasion here for considering that question as bearing upon the proposition now under consideration. The men became insubordinate and

quit work because they did not receive their pay as promptly as they desired, and this was probably occasioned by the default of the defendants, and may be attributable to a breach by them, in that respect, of the contract and as one of its consequences, as it is likely that the plaintiff was not, nor were Moore & Sullivan, prepared to pay them without receiving the funds from the defendants. But the latter early offered to furnish the money for that purpose upon the condition that it should be used to pay the men. We do not regard this as important upon the question here in its legal aspect. The view taken of this case leads to the conclusion that the plaintiff was justified, by the breach on the part of the defendants, in abandoning the further performance of the contract, and entitled to recover for the work done. But the breach not being such as to deny to him the right and power to go forward with the work and perform, he could not recover, as damages, the value of his contract or (what may be understood to mean the same thing) prospective profits. There is nothing in the terms of the contract characterizing the consequence of default in payment of an installment other than such as may be implied by law. In view of the finding by the referee of the quantity of work done under the contract,

| | |
|---|---:|
| It amounted to........................................ | $22,761 43 |
| The recovery in action number one, $12,854, and payment, $5,000 ....................................... | 17,854 00 |
| The balance unpaid is................................ | $4,907 43 |

This result is reached by giving to the plaintiff the benefit of the payments provided by the contract to be made on the final estimate of the work when completed, in stock, for which the breach of the contract, as found by the referee, permits the allowance to the extent of the work performed. (*Pinney* v. *Gleason*, 5 Wend., 393.) This computation makes the amount awarded by the referee, as damages, $11,080.94.

If these views are correct the judgment in action number one should be reversed and new trial granted, costs to abide the event, unless the plaintiff stipulate to deduct from the amount of the recovery $6,940.10, and interest thereon from August 5, 1882; and in that event the judgment be so modified, and as modified affirmed, without costs of this appeal to either party. And in action number

two the judgment should be reversed and a new trial granted, costs to abide the event, unless the plaintiff stipulate to deduct from the amount of the recovery $11,080.94, and interest thereon from August 17, 1882; and in that case the judgment be so modified, and as modified affirmed, without costs of this appeal to either party.

SMITH, P. J., BARKER and HAIGHT, JJ., concurred.

So ordered.