## TIPTON *et al. v.* FEITNER.

It is a question of intention, whether the several parts of a contract, made at one and the same time, are to be taken distributively and are independent; or whether entire performance by one party, of all stipulations on his part, is a condition precedent to his right of recovery against the other party in respect to a portion of the contract which he has fully performed.

In arriving at such intention, it is to be assumed that goods are not to be delivered without payment, where there is no provision for a credit.

The plaintiff in one agreement, contracted to deliver forthwith a quantity of dressed pork to the defendant, for a certain price, and also to sell him, upon their arrival, at a different price, a number of live hogs, then on their way and expected in a few days; no stipulation being made as to the time of payment for either. The pork was delivered, but the plaintiff violated his contract by not delivering the live hogs: *Held,* that this did not preclude him from recovering the price of the dressed pork, subject to recoupment for the defendant's damages from the breach of contract as to the live hogs.

APPEAL from the Supreme Court. Action to recover the price of certain slaughtered hogs, sold by the plaintiffs to the defendant. It was defended on the ground that they were purchased under a special contract with the plaintiffs, which had been violated on their part. The case, according to the finding of the referee, before whom it was tried, was as follows: On the 3d day of February, 1855, at the city of New York, the plaintiffs agreed with the defendant, by parol, by one and the same contract, to sell the defendant eighty-eight dressed hogs, then at the slaughter-house of a third person, in the city, at 7 cents per pound; and also certain live hogs of the plaintiffs, which were being driven, and were then on their way from the State of Ohio to New York, at 5¼ cents per pound live weight, the defendant agreeing on his part to buy the dressed and live hogs at these prices. The dressed hogs were to be delivered immediately after the sale, and the live ones on their arrival at the city, where they were expected, and did arrive some days afterwards. The dressed hogs were delivered on the same day, but were not paid for by the defendant. The live hogs arrived five days afterwards; they were not delivered to the defendant, but were slaughtered by the plaintiffs, and by them sold to other parties. The defendant insisted that the plaintiffs could not recover for the dressed hogs, on the ground that they had failed to perform their agreement as to the live ones. The referee however held, that the plaintiffs were entitled to recover the price of the dressed hogs, deducting the damages which the defendant had sustained for the breach of the other branch of the contract; and he reported accordingly: The dressed hogs came to $1,182.57; deducted for defendant's damages, $401, leaving $780.38, for which judgment was given, which was affirmed at a general term. The defendant appealed.

*Clarkson N. Potter*, for the appellant.

*James Edwards*, for the respondents.

DENIO, J. It is not universally true that a party to a contract who has himself failed to perform some of its provisions is thereby precluded from recovering damages for a breach committed by the other party. The question in such cases is, whether the stipulation which the plaintiff has failed to observe was a condition precedent to the performance by the defendant; and whether it is of that character or not depends upon the general scope and intention of the agreement, to be gathered from its several provisions. If the parties have in terms stipulated that the defendant's performance shall be dependent or conditional upon something to be done by the plaintiff, the case is a plain one. It is equally so where the act to be done by the plaintiff must naturally precede, in the order, of time what the defendant is called upon to do, and where the former is necessary to be done to enable the defendant to perform; and also where the defendant's performance is the payment or equivalent for something which he is to receive from the plaintiff, unless, in the latter case, it is provided that such equivalent is to be rendered in advance of what is to be received on account of it, credit being given for the latter.

In contracts for the purchase of property, real or personal, where there is no stipulation for credit or delay on either side, the delivery of the property (or its conveyance where it is of a nature to pass by grant), and the payment of the price are each conditions of the other, and neither party can sue for a breach without having offered performance on his part. Such was the nature of the contract in this case. The plaintiffs had slaughtered hogs and also live hogs to dispose of, and the defendant agreed to purchase the whole of both kinds, and to pay a certain price per pound, discriminating, however, as to price between the two species of property. There was no agreement for credit for any part of the property for any time; and in the absence of such a stipulation we must consider that it was to be paid for on delivery, and that the delivery of the property and the payment of the price were to be concurrent acts. But a question then arises, whether the contract was entire in the sense that a delivery of the whole —

the live hogs as well as the dressed meat—was to precede the payment for the latter; and it is upon the answer to that inquiry, as I think, that this case depends. And I am of the opinion that the bargain respecting the several kinds of pro perty, in regard to the payment for each, is to be taken distributively. The dressed hogs were to be delivered immediately, while those which were alive, and were on their way from Ohio, were to be delivered when they should arrive. It would not be unreasonable for the parties to have agreed that payment for those first delivered should be postponed until the others came to hand, so that there should be one settlement for the whole; but it would be a more probable mode of adjustment for the purchaser to agree to pay for the parcel which he was to receive at once, and for the other when he should receive it. In that way neither of the parties would be called upon to trust the other—and there being nothing in the contract which looked to credit, we cannot, I think, reasonably hold that any was contemplated. The difference in the kind of property, in the price, and in the time of delivery showed such a diversity in the two operations as to preclude any necessary or probable inference that the one first to be consummated by delivery was to be suspended, as to its liquidation, for the period, more or less uncertain, which might elapse before the other would be ready for adjustment. Upon the construction of so peculiar an agreement a precise precedent is not to be expected. But there is a modern case in the Court of King's Bench, which somewhat confirms the opinion to which I have arrived. The defendant contracted in writing, in October, 1829, to supply the plaintiff with wheat straw sufficient for his use as a stable keeper, till the 24th June, 1830, to be delivered at his stables in London, at the sum of 33*s.* per load, of thirty-six trusses, and to be delivered at the rate of three loads in a fortnight; and the plaintiff agreed to pay the defendant "the sum of 33*s.* per load for each load of straw so delivered" on his premises, from that day to the 24th June. The action was for not continuing to deliver the straw after it had been furnished under the contract for about three months;

and the defendant's excuse was, that the plaintiff had refused to pay down for the last load. The question then was, whether the price was payable on the delivery of each load, and the court held that it was so payable. Lord TENTERDEN, Ch. J., said, he had no doubt that by the terms of this agreement the plaintiff was to pay for the loads of straw as they were delivered. If that were not so, he said, the defendant would have been liable to the inconvenience of giving credit for an indefinite length of time; and in case of non-payment, bringing an action for a very large sum of money, which did not appear to have been intended by the contract. PARKE, J., said, the defendant clearly did not contemplate giving credit. The other judges concurred. (*Withers* v. *Reynolds,* 2 *Barn. & Adol.,* 882.)

Assuming that I am right in the construction of the contract, I am of opinion that the defendant cannot refuse to pay for the dressed hogs delivered, on the ground that the plaintiff has broken his contract respecting the live ones. The only condition upon which the payment for the former depended, was their delivery. The payment might have been required to be made concurrently with the delivery; but that being waived, the plaintiff might have sued immediately afterwards, and before the time for the delivery of the other property had arrived. It is true, that before this action was commenced the plaintiff was in default for not delivering the other parcel of the property; but for that wrong the defendant had his remedy, either by separate action or by a *recoupment* in the plaintiff's action; and the referee has allowed him the benefit of it in the latter form. The law no doubt intends to discourage men from breaking their engagements, but this is not generally accomplished by visiting them with a penalty beyond the damages sustained by the party injured. If I am right in my construction of the agreement, there can be no pretence that the delivery of the hogs coming from Ohio was a precedent condition to the payment for the others; and if this were not so when the agreement was made, it did not become so by the facts which afterwards took place.

The defendant's counsel referred to an opinion of Judge

SPENCER, in pronouncing the judgment of the court in *Ketchum* v. *Evertsen* (13 *Johns.*, 359–365), in which that learned and generally discriminating judge said, that a party who had advanced money or done an act in part performance of an agreement, and then stopped short and refused to proceed to the ultimate conclusion of the agreement, the other party being willing to proceed and fulfill all his stipulations according to the contract, could never be suffered to recover for what had been thus advanced or done. This *dictum*, taken broadly, would always preclude a party from recovery for anything done under a contract, where he had himself violated any of its provisions but the case before the court was that of a vendee in an executory contract for the purchase of land, who had paid a part of the price, and refused, without cause, to make the final payment and receive a deed. When applied to such a case, the doctrine was perfectly correct. But it would not hold where a vendee should, by a single contract, agree to sell one piece of land for $1,000, to be conveyed and paid for in one month, and a different parcel for another sum, to be in like manner conveyed and paid for in two months, and should entitle himself to be paid for the first parcel by a strict performance, but should make default in conveying the other, and should then bring his action for the price of the first piece—though it would be embraced in the generality of the expression used by the judge.

The case of *Champlin* v. *Rowley* (13 *Wend.*, 258); *S. C. in error* (18 *id.*, 187), is equally inapplicable. The plaintiff agreed to deliver all the hay he had at the defendant's wharf, at Rhinebeck, before the close of navigation that season, at a certain price per hundred weight, to be paid for, except a small sum paid down, when the whole quantity should be delivered; and having delivered part, sued for the price of the part so delivered; and it was held he could not recover, on the ground that the delivery of the whole quantity was a condition precedent to any further payment. *Mead* v. *Degolyer* (16 *id.*, 632), was a case of the same kind. The plaintiff agreed to deliver a large quantity of timber, for which he was to be

Tipton *v.* Feitner.

paid—except the part he received before he brought the suit—when the whole quantity should be delivered. He furnished a part, and then, without any excuse or apology whatever, stopped short, and claimed to recover for the timber actually delivered. The judgment was of course against him.

These are the most striking of the cases relied on by the defendant's counsel. There is another class arising out of contracts for services, where the party employed agreed to serve for a fixed period, or to execute a particular work, and was to be paid by the week or month, or by some rule adjusted by reference to the separate parcels of the work performed, in which it has been uniformly held—except in one case, where the default was occasioned by the death of the party employed—that the whole of the service must be performed in order to warrant a recovery for any part. (*McMillan* v. *Vanderlip*, 12 *Johns.*, 165; *Cunningham* v. *Morrell*, 10 *id.*, 203; *Jennings* v. *Camp*, 13 *id.*, 94; *Reab* v. *Moor*, 19 *id.*, 337; *Lantry* v. *Parks*, 8 *Cow.*, 63; *Monell* v. *Burns*, 4 *Denio*, 121; *Wolf* v. *Howes*, 20 *N. Y.*, 197.) These cases proceed upon the ground that the contracts were entire in the sense that full performance of the services contracted for was, by the agreement of the parties, to be made before anything became payable by the employer. On this assumption, the principle of law upon which a recovery was denied was perfectly plain. But suppose a contract for a year, the employers agreeing to pay the servant ten dollars at the end of each month; and a part performance and subsequent breach by the servant, the employer being in arrear for several full months. In such a case, I conceive that the servant should be permitted to recover for the wages earned, subject to a *recoupment* of the master's damages for the time covered by the breach. I am ignorant of any principle upon which it could be held that he could not recover anything. It certainly cannot be upon the ground of the non-performance of a condition precedent; for it is absurd to say, that under such a contract, serving the last month was a condition to the payment for the first. In the case of contracts for personal services, the death of the servant we have seen

Tipton *v.* Feitner.

would enable his representatives to recover a *pro rata* compensation; but in other cases, as in agreements for the purchase of articles of property to be delivered at different times, a failure to deliver the last parcel, though it should result from an unforeseen accident, and though the part not delivered should bear a very small proportion to the value of these already delivered, would, upon the opposite doctrine, preclude a recovery for any part. If parties will be so incautious as to stipulate for a full performance of a contract of this character, as a condition to the payment of anything, the law will not relieve them; but if they take care to provide for payment upon the delivery of each article or each parcel, or, in the case of services, for periodical payments, they must be permitted to recover for the part which by the terms of the agreement has become payable, upon deducting the damages of the other party in respect to the portion unperformed. The English courts have laid down a still more liberal rule. In *Oxendale* v. *Wetherell* (9 *Barn. & Cress.*, 386), the Court of King's Bench held, that where by a contract of sale, the vender agreed to deliver two hundred and fifty bushels of wheat within a specified time, and delivered part, but not the residue, he might, after the time mentioned in the contract had expired, recover from the purchaser the value of the wheat delivered to and retained by him. That case has been disapproved of in this State, with good reason, as not consistent with the principle that a condition precedent must be substantially performed. (18 *Wend.*, 191.) But if the agreement had not been, as it was, entire, but had contemplated a delivery by parcels, and payment for each parcel at the time of delivery, I suppose the judgment would have been concurred in everywhere.

The position, that one who has violated a contract on his own part, cannot recover for the breach of any of its stipulations by the other party, however disconnected with the one he has broken cannot be sustained. There are many cases the other way; and the rule would be one of needless severity. (*Boon* v. *Eyre*, 1 *H. Black.*, 273, *note; Campbell* v. *Jones*, 6 *Term R.*, 570; *Carpenter* v. *Cresswell*, 4 *Bing.*, 409; *Havelock* v. *Geddes*, 10

*East.*, 555; *Davidson* v. *Gwynne*, 12 *id.*, 381.) The cases in our own courts, in which covenants have been adjudged to be independent, show that there may be provisions in contracts available to the party in whose favor they are made, though he is unable to aver performance of other provisions of the same contract binding on him. (*Robb* v. *Montgomery*, 20 *Johns.*, 15; *Slocum* v. *Despard*, 8 *Wend.*, 615; *Morris* v. *Sliter*, 1 *Denio*, 59.)

I am in favor of affirming the judgment appealed from.

SELDEN, J. It is said that the plaintiffs cannot recover for the dressed hogs actually delivered, because they failed to deliver the live hogs upon their arrival in New York; the delivery of the latter being, as it is insisted, a condition precedent to the right of the plaintiffs to claim payment for the former. This consequence is supposed to follow, from the finding of the referee that the plaintiffs agreed to sell both the live and the dressed hogs "in one and the same contract."

But it by no means follows, because a party has agreed to do several things by one and the same contract, that performance of the contract in all its parts is a condition precedent to any right to claim payment for the portion which may have been done. Were this so, there could be no such thing as "independent covenants" in any contract. It is always a question of construction, depending upon the terms of the contract, its subject matter, and the circumstances under which it was made, whether there is a condition precedent or not. There are certain well established legal principles which seem to me decisive of this question in the present case. It is plain of itself and well settled by authority, that when by the terms of a contract a payment by one party is to precede some act to be done by the other, then the performance of the act cannot be treated as a condition of the payment; as in the case of contracts for the sale and conveyance of lands, where payments are to be made before the time fixed for the conveyance.

Again, it is equally well settled, that where, upon the sale of goods, no other time is fixed, payment is to be made when

the goods are delivered; and the vendor is under no obligation to deliver them without such payment. There is nothing in the present case which is at all indicative of an intention to give a credit to the defendant. If the contract had been to deliver articles of a perfectly homogeneous nature at different times, but at a uniform price, there might possibly be some ground for holding that the delivery of the whole was to precede any payment for the portion delivered. But even in that case, the authorities show that there must be something in the terms of the contract, from which the intention to make the delivery of the whole a condition, may be implied.

Thus, in the case of *Withers* v. *Reynolds* (2 *Barn. & Adol.*, 882), where the agreement was to supply the plaintiff with wheat straw of good quality, sufficient for his use as a stable-keeper, and delivered on his premises, at the rate of three loads in a fortnight, up to a certain period, at the price of 33*s.* per load or thirty-six trusses; the plaintiff agreeing to pay for each load at that rate, it was held that the plaintiff was bound to pay for the loads as they were delivered. All the straw was to be delivered, in that case, under "one and the same contract;" and moreover, the defendant had positively agreed by that contract, to supply the plaintiff with straw for a certain length of time—an agreement which he refused to fulfill; and yet it was held, that performance in this respect was not essential to his right to claim payment for the straw actually delivered.

As the effect of a condition precedent is, to prevent the court from dealing out justice to the parties according to the equities of the case, it is not surprising that we find it so frequently said that constructions productive of such conditions are not to be encouraged. Parties must be held strictly to their contracts; and where they have agreed in terms or by plain implication to a condition which is to bar them of a recovery according to what is equitable and just, they must abide by the consequences. But courts are to see that such was the intention of the parties, before they are held up to so rigid a rule.

Tipton *v.* Feitner.

The contract in this case, although "one and the same," is by no means indivisible. On the contrary, it consists of two distinct parts, having no necessary connection, except that they were made at the same time. Each portion of the contract is complete of itself without reference to the other. On what then are we to predicate an assumption, that its separate branches were intended to be dependent upon, rather than independent of, each other?

The implication must be plain and unmistakable to justify such a conclusion, as its effect would be to impose upon the plaintiff a heavy penalty or forfeiture. If the time for the delivery of the live hogs had been definitely fixed, it might be more reasonable to suppose that the plaintiffs were to wait for payment for the dressed hogs until that time. But the former had not arrived; their arrival might be delayed; they might never arrive; and yet the conclusion contended for supposes the plaintiff to have consented to give this indefinite kind of credit for a marketable article, which would have commanded the money any day at the market price.

It is urged that the referee, by finding that the whole agreement was by "one and the same contract," has virtually found that the contract was entire and indivisible, and that this finding settles the question. But whether the contract is indivisible or not, the terms of the contract being given, is a question of law, upon which the finding of the referee is not conclusive. Such, however, is not the true construction of the finding. It evidently is not the construction put upon it by the referee himself, because he held that the plaintiffs could recover. All that is meant by the finding is, that the whole agreement, consisting of different parts, was made at one and the same time.

In my view the contract was plainly divisible, and the judgment of the Supreme Court should therefore be affirmed.

JOHNSON, Ch. J., COMSTOCK, GRAY, GROVER and STRONG, Js., concurred; ALLEN, J., expressed no opinion.

Judgment affirmed.