CHARLES R. JOHNSON, Appellant, *v.* THE UNION SWITCH AND SIGNAL COMPANY, Respondent.

*Court of Appeals, January 20, 1892.*

1. *Contract. Breach.*—A breach by one party to a contract signed by two parties containing mutual stipulations does not terminate the contract until the other party assents thereto.
2. *Same. Construction.*—The contract in this case was so construed as to secure to the defendant the option to accept a license and use the plaintiff's inventions, and to make him liable for their use only during the time when it actually used them.

Appeal from judgment of the New York superior court, general term, reversing judgment for plaintiff, and directing that the complaint be dismissed.

*George W. Miller*, for appellant.

*John W. Houston*, for respondent.

EARL, J.—In September, 1886, the plaintiff and defendant entered into a written contract whereby he became its manager at a salary of $5,000 per year, and gave it the exclusive right to use all the inventions relating to the signal business which he or Henry Johnson then had or might thereafter make or acquire, and it agreed to pay for the use of such inventions the sum of $3,000 per annum. In addition to these compensations for patents and salary, it further agreed to pay him ten per cent of its net profits. Then in the seventh clause of the contract it was provided as folfows: "It is mutually agreed that this contract shall continue for a period of ten years, subject to termination by

either party, however, by one year's notice (in writing) to the other party at any time after the second year, or by the death of Charles R. Johnson, or by his permanent inability to perform his duties as general manager."

The "termination" here spoken of is of the entire contract, and after such termination all parts of the contract would cease to have further operation, and no other temination was contemplated by the parties. Except by his death or permanent inability, the contract could not be terminated in less than three years.

The right to use the inventions given in the third clause of the contract was intended to be co-extensive with the stipulated time of service of the plaintiff as the ten per cent. of net profits was to be paid to him, not for service alone, and not alone for the use of the inventions, but for both. I can perceive no reason for supposing that the parties intended that the right to use the inventions provided for in the third clause should survive the termination of the contract as specified in the seventh clause.

Upon the termination of the contract as specified in the seventh clause, the parties were to be brought into new relations by the operation of the eighth clause, which is as follows : " It is further mutually covenanted and agreed that in the event of the termination of this agreement, the said company, by reason of the expenditures that shall have been made during the continuance of this agreement, shall have a license (not exclusive) to use all of the inventions that may have been used in carrying on the business of the company, on the payment of sixty-five hundred dollars per year, said sum to be paid quarterly, and shall be entitled to purchase from the said Charles R. Johnson, or his executors, the exclusive right to use all of the inventions upon as favorable terms as he or his executors may be willing to grant to any other parties."

This clause was to have operation only after the termination of the contract, of the whole contract and all the stipu-

lations therein contained as embodied in the prior seven subdivisions thereof. It was intended to secure to the defendant some advantage on account of the expenditures made by it " during the continuance of the agreement," that is, during the continuance of the agreement by its terms. The " termination " which the parties had in mind was the same termination spoken of in the prior clause. It is entirely improbable that they meant any other termination of the agreement than those they had just provided for, and which were then in their contemplation. If they had meant to embrace in the language used by them a termination of the agreement by a breach thereof, it is probable that they would have used some language appropriate to express that meaning. A breach by one party to a contract signed by two parties containing mutual stipulations does not terminate the contract unless the other party assents thereto. The obligation of the contract remains, and in a proper case the other party can enforce specific performance thereof, and if it be a case in which specific performance cannot be had he may recover his damages for a breach in an action at law, and the damages thus recovered will stand in lieu of performance. If the plaintiff's contention be right that this contract could be terminated by a breach thereof, then the plaintiff could have terminated the same at any time by a breach on his part, and could thus have put the eighth clause in operation and could thus place himself upon his construction thereof, in a position to recover the amount stipulated therein at the end of every quarter. The action in such a case to recover the amount stipulated would not be founded upon the broken contract, but upon the contract which came into operation upon the termination of the broken contract. The parties certainly could not have contemplated that the language used by them should place them in such a position.

We are, therefore, of opinion that the contract between the parties was not terminated and that therefore the eighth

clause did not come into operation, and that this action based thereon cannot be maintained.

But there is still a further answer to this action which is at least equally obvious and satisfactory, even upon the assumption that the contract had been terminated by a breach thereof on the part of the defendant.

The claim of the plaintiff is that upon the termination of the contract the defendant became absolutely bound to pay him for the license to use the inventions the sum of $6,500 per year during at least the whole of the ten years mentioned in the seventh clause of the contract, whether it used the inventions or not; and I do not perceive from any language used in clause eighth any reason for limiting the obligation of the defendant, if it exists, to any period of time less than the life of the patent; and thus upon the plaintiff's construction of the clause an extraordinary burden rests upon the defendant, and the intention to impose it on the one side and to assume it on the other should be clearly found in the language used.

Upon the plaintiff's contention, for what was the $6,500 to be paid? Not for any exclusive license to use the inventions for any time or at any place, for the plaintiff might license, and had the right to license, any and all persons to use them at all times and places, and in the same business carried on by the defendant. By the payment of $6,500 the defendant could procure no monopoly at any time or place and no advantage whatever over any competitor or any other person to whom the plaintiff might give a license to use his inventions. Can it be believed that the officers of the defendant, looking after its interests, could have intended to bind it to pay this large sum of money for a series of years, without securing to it any monopoly or exclusive advantage whatever? Such an extraordinary responsibility should be imposed upon the defendant only by very clear and plain language showing that such was the intention.

The language used shows quite plainly that such was not

the intention of the parties. The defendant did not bind itself to take a license, or to use the inventions. The effect of the eighth clause is to secure to the defendant the right to use the inventions upon the payment of the sum stipulated. It did not bind itself to use the inventions or to pay for their use unless it did use them. It was clearly optional with it to use or not to use them; but in case it did take a license to use them then it was to pay the stipulated sum. It was to have the option "by reason of expenditures that shall have been made during the continuance" of the agreement. It was a privilege secured to it to indemnify itself against such expenditures; and as it was optional with it, the term and duration of the license were not specified. They were left to be arranged when the time came for the use of the inventions by it, and then it could stipulate as to the places where and the time during which, and the terms upon which, the inventions were to be used. It was to have the privilege, if it desired, to use the inventions, and also to purchase them upon as favorable terms as the plaintiff might be willing to grant to other parties. There is no allegation in the complaint that the defendant ever exercised its option to take any license, or to use any invention of the plaintiff's. There is not even an allegation in the complaint that during the quarter commencing on the 1st day of December, 1888, and ending on the 1st day of March, 1889, for which the stipulated compensation is claimed in this action, the defendant used any of the inventions. The defendant in its answer denied that it did use them, and there was no evidence whatever showing that during that time it used any of the inventions; and more than this, the learned counsel for the plaintiff does not claim in his brief submitted to us that the defendant used the inventions during that time, or that there was any evidence that it did. He plants the plaintiff's case upon the broad ground that he has the right to recover in this action without any evidence whatever that the defendant used the inventions and whether it used them

or not. As it was optional with the defendant to accept a license and use these inventions, it could be liable, under its agreement, for their use, only during the time when it actually used them.

The plaintiff testified that at the time of the breach of the contract on the part of the defendant he had an interview with its president, in which he said : " Of course, you will pay me the $6,500 a year royalty," and the president answered : " Yes ; oh yes, we shall pay the royalties." These declarations of the defendant's president are not, and are not claimed by plaintiff's counsel to be important in this case. There is no proof whatever that he had any authority to exercise the option on the part of the defendant, and even if he did have, the language does not import that the defendant would pay the royalties for an indefinite time in the future or for the whole term of ten years, or for the life of the patent. All that can be fairly inferred from the language used is that he would pay the royalties for the use of the patents so long as the defendant used them, and so far as the evidence in this case discloses the facts, it has paid the royalties during the time it used the inventions.

The view I take of this contract and of the rights of these parties can work no injustice whatever to the plaintiff. He is left with the absolute control of his inventions, and if the defendant shall use them without his license it can be prosecuted for infringement of his patents. If it has any rights still subsisting under the eighth clause, it can use the inventions only upon payment of the large compensation stipulated, and then it can use them only in common with every other person whom the plaintiff may also choose to license as its competitors.

We are, therefore, of opinion that the judgment should be affirmed, with costs.

O'BRIEN, J. (dissenting).—This appeal involves the construction of a written instrument executed by the parties to

this action on the 20th day of September, 1886.. The plaint-
iff sought to recover $1,625, that being the sum which he
claimed was due to him from the defendant under the terms
of the instrument, for license fees, for the quarter ending
March 1, 1889, at the rate of $6,500 per year. The courts
below have given to the instrument an interpretation that
has thus far defeated the plaintiff's claim. A brief analysis
of the language used by the parties is necessary in order to
understand the intention. The paper begins with a some-
what elaborate recital of the relations which the parties held
to each other for some considerable time prior to its execu-
tion, and is in these words :

" Whereas, by various agreements now in force between
the Union Switch & Signal Company and Charles R. John-
son, said Johnson acts as the signal engineer of the said
company, makes contracts to erect the interlocking appar-
atus, and has over and above his salary a portion of the prof-
its as compensation, and has licensed the company to use
certain inventions necessary in connection with the inter-
locking business, all of which agreements are to terminate
on the 30th day of June, 1888, or as soon thereafter as present
contracts are completed ; and

" Whereas, in lieu of these agreements above terminated,
a new agreement has been determined upon, now to evidence
the same this memorandum of agreement between said Union
Switch & Signal Company, party of the first part, and Charles
R. Johnson, party of the second part, witnesseth as follows : "

These recitals reveal the fact that the parties were con-
tracting with reference to inventions in the railroad signal
business that had been in use for some time, the utility and
value of which the defendant knew by actual test and prac-
tical experience. The prior contract, under which the de-
fendant was permitted to use the inventions, had yet about
a year and a half to run, and it is reasonable to conclude
that the parties intended to make a permanent and well-
defined arrangement in regard to the right to use inventions

of the plaintiff in the business that had passed beyond the experimental stage, and were understood by both parties to be of substantial value and benefit to the defendant in the prosecution of its business. The instrument then proceeds, in distinct clauses, to state the rights and obligations of the respective parties.

By the first and second clauses the plaintiff is appointed general manager of the defendant company at a salary of $5,000 per year. The third clause licenses the defendant to use the inventions, and the fourth fixes the license fee. These two clauses are in the following language:

"*Third.* Said Charles R. Johnson hereby grants, sells and conveys to the said company the exclusive right, except as hereinafter provided, to the use of all of the inventions that he, said Johnson, now has, relating to the signal business, or that he may hereafter make or acquire, and also the right to use the present inventions of Mr. Henry Johnson relating to signals and switches, and any others which he may hereafter make, including all which the said Charles R. Johnson has acquired or may hereafter so acquire.

"*Fourth.* Said company hereby covenants and agrees to pay for the use of the said inventions the sum of three thousand dollars per annum, settlement to be made quarterly."

It will be observed that this provision by its own terms confers upon the defendant the right to use the inventions for a specified compensation. In the numerous litigations that have grown out of the instrument it was held by at least one of the courts below that it was but a mere option or an executory agreement to give a license at some future time, and that construction is now urged in this case in behalf of the defendant. But it is plain that the words "hereby grants, sells and conveys to the said company the exclusive right, etc.," import a complete executed license conferring upon the defendant a present exclusive right to use the inventions without any further act on the part of the plaintiff. The fifth and sixth clauses provide for the employment of

Henry Johnson, who, we may assume, was a relative of the plaintiff, as mechanical manager, at a salary of $4,000 per year, and that the plaintiff in addition to the compensation secured for services and the inventions should have ten per cent of the net profits of the company. The important part of the instrument and that upon which the plaintiff's right to maintain the present action turned is to be found in the seventh and eighth clauses, which are as follows :

" *Seventh.* It is mutually agreed that this contract shall continue for a period of ten years, subject to termination by either party, however, by one year's notice (in writing) to the other party at any time after the second year, or by the death of Charles R. Johnson, or by his permanent inability to perform his duties as general manager.

" *Eighth.* It is further mutually covenanted and agreed that in the event of the termination of this agreement, the said company, by reason of the expenditures that shall have been made during the continuance of this agreement, shall have a license, not exclusive, to use all the inventions that may have been used in carrying on the business of the company, on the payment of sixty-five hundred dollars per year, said sum to be paid quarterly ; and shall be entitled to purchase from the said Charles R. Johnson, or his executors, the exclusive right to use all of the inventions upon as favorable terms as he or his executors may be willing to grant to any other parties."

It is apparent that the contract expressed in this instrument is not entire, but separable and divisible. It provides for two things, namely : the personal services of the plaintiff to be rendered to the defendant, at an agreed compensation, and the right of the defendant to use certain inventions of the plaintiff in the business, for a certain period of time and upon payment of a specified license fee. A contract is several or distributive when the part to be performed by one party consists of several distinct and independent items, and the price to be paid by the other is apportioned to each item.

A breach of any part of such a contract, while it may entitle the injured party to damages, will not as a general rule discharge him from the performance of the remainder, unless the breach be such as to amount to a refusal to perform the balance of the contract, or be of such a character as to wholly frustrate its object.   2 Pars. on Cont., 517 ; Hare on Cont., 618 ; Tipton *v.* Feitner, 20 N. Y. 423 ; Pierson *v.* Crooks, 115 Id. 539 ; 26 St. Rep. 492 ; Lee *v.* Bebee, 13 Hun, 89 ; Talmage *v.* White, 3 J. & S. 218 ; Swift *v.* Opdyke, 43 Barb. 274 ; Newton *v.* Winchester, 16 Gray, 208 ; Miner *v.* Bradley, 22 Pick. 459.

The contract of employment and the license to use plaintiff's inventions might in this case have formed the subject of two separate agreements, and the fact that but one instrument was used to express the intention of the parties as to both matters does not necessarily show that there is but one contract.   It is important in construing the instrument to keep in view its distributive character, because it is manifest that the parties have used some terms which apply to the whole writing, others that apply only to that part relating to the employment of the plaintiff as manager, and still others that apply only to the license.

It is conceded that the defendant on the 1st of March, 1888, dismissed the plaintiff from his position as manager without cause, and thus prevented him from performing the service part of the contract, and his further connection with the defendant's business ceased.   The plaintiff thereupon brought an action against the defendant to recover his damages for such wrongful dismissal.   In that action he recovered a judgment, not for a breach of the whole contract, but that part which secured him employment with the defendant at a stated compensation.   Indeed, as I understand the record, the court at the trial of the cause expressly held that a recovery could be had on no other ground in that action, and this view seems to me to be entirely sound.   Perry *v.* Dickerson, 85 N. Y. 345.   Aside from the fact that the royalties

or license fees which the plaintiff seeks to recover in this action were not due when he brought the suit for damages, as they fell due quarterly in the future from time to time, it is also apparent that there was no breach or termination of the license or right to use the inventions. The court below in dismissing the complaint in this action assumed that during the period for which royalties are claimed in the complaint the defendant had the use and enjoyment of the inventions as the plaintiff's licensee. Evidence was given by the plaintiff on that question, and as the trial court held that there was no question of fact to submit to the jury, we must assume that the defendant is in the enjoyment and use of the inventions under the contract, if the fact is material. But it seems to me much more important to ascertain whether the defendant has the right, under the written instrument, to the use and enjoyment of the inventions, for if it has, then it is bound to pay the plaintiff the stipulated license fee whether it uses them or not. Indeed the true test of the defendant's liability in this action would seem to depend upon its right, under the contract, to the use of the inventions. If it has such right against the plaintiff himself and all the world, there can be no reason in law or justice why it should not pay the compensation that it agreed to pay therefor. It is certain that the instrument in question granted a license to the defendant to use the inventions for ten years upon certain conditions, and that this license is still in force unless revoked.

There was no provision for the revocation of the license before the time of the contract expired except that contained in the seventh clause, providing for a notice of one year in writing after the expiration of the second year, and it is not claimed that such notice has been given. The only thing that has happened since the execution of the contract is the wrongful discharge of the plaintiff from his place as manager, and the defendant has been obliged by the judgment of the court to make that breach good by the payment of the

damages sustained. But neither that breach nor the judgment therefor and satisfaction thereof has touched or impaired the license any more than if it was contained in a separate instrument. The defendant might break that part of the contract of service, and the plaintiff might recover damages therefor, but that would not revoke the license or impair the defendant's right to use the inventions. The paper contained a fully executed, irrevocable license by the plaintiff to the defendant to make, use and sell the inventions for ten years, and this is not affected in the least by the fact that the defendant has violated another and independent part of the contract. The integrity of the license is not affected by the wrongful discharge of the plaintiff from his position of general manager any more than it would be in case of the wrongful discharge of his relative, Henry Johnson, from his position as mechanical manager. The license fee was subject to change. While plaintiff was general manager it was to be $3,000. If displaced from that position, it was to be $6,500 per year, payable quarterly, but the right to use the inventions remained the same as before. The only way in which the defendant's wrongful act affected the contract was to increase the license fee, and to convert what was before an exclusive right into one non-exclusive. The eighth clause uses the words "in the event of the termination of this agreement," etc. What agreement? Certainly not the license or permission that the plaintiff gave to the defendant to use the inventions, for that very right is recognized in the same sentence as still existing.

It would be manifestly unfair to impute to the parties such a careless use of language as to describe in the same sentence a license as terminated and yet existing. A license is the permission to do an act or a series of acts which might be unlawful or an infringement upon the property rights of another without it. While in a certain sense it may be said to be an agreement or a contract, yet it is not designated by either of these terms in common parlance, and there is not

the slightest reason to believe that when the parties to the instrument in question spoke of "the termination of this agreement" they referred to that part of the paper which granted a license to use the inventions. On the contrary, it is quite apparent when the whole of section eight is read in connection with other parts of the instrument that they referred to the agreement by which the plaintiff was appointed manager at a stated compensation. That was the only part of the contract as to which a breach was possible and the only part involved in the suit for damages. It is quite clear, therefore, that the right conferred upon the defendant by the license still exists notwithstanding the breach by the defendant of another and divisible part of the contract. The defendants are, therefore, in the enjoyment and use of every right and privilege conferred by the license, not wrongfully, as has been suggested, but under its sanction and express authority, and the obligation to pay the license fee would seem to follow this right of enjoyment. The dismissal of the plaintiff from his position as manager of the company, without excuse or cause, followed by the action for damages and the satisfaction of the judgment, terminated the contract relations of the plaintiff and defendant as master and servant, or employer and employee, and this was the termination or contingency contemplated by the parties in order to bring the eighth section into operation. Suppose that the plaintiff instead of granting a license in the instrument in question had leased to the defendant for ten years, in the same or in equivalent words and subject to the same conditions, the lands and buildings in which its manufacturing operations were carried on. Would the wrongful dismissal of the plaintiff as manager in that case terminate the defendant's lease or estate for years in the real estate, or would it impair the obligation of the defendant to pay the rent?

There can be, in my opinion, but one answer to this question. We would then be compelled to hold, as we ought to

hold now, that the words "in the event of the termination of this agreement, etc.", in § 8, applied to the contract of employment and not to the lease, and that as the defendant still retained, under a divisible and independent part of the writing, the right to enjoy the demised premises, during the term, so its obligation to pay the rent as it fell due, from time to time, still remained. To say in such a case that in order to give a right of action under § 8 for the installments of rent the plaintiff must first show that the service part of the contract was terminated in some particular way, that is to say, in the way provided in § 7, namely, by written notice, death or inability to perform the service, would be to give an extremely narrow and artificial construction to the language used by the parties and to attribute to them an intention without any apparent basis in common sense. When the parties spoke of the termination of the agreement for personal services they meant just what the words import, a complete severance of these relations however brought about. When the distinct parts of this contract and their relations to each other are kept in view, the intention of the parties is manifest. The defendant employed the plaintiff as manager at a salary of $5,000 per year and ten per cent. of the net profits. A possible breach of this part of the agreement was contemplated and actually took place and had the effect of terminating the relation of employer and employed and no other. The plaintiff licensed the defendant to use his inventions for ten years, subject to be terminated by either party on a written notice of one year after the contract had existed and been in force two years, at a stipulated license fee and the character of the license and the amount of the fee was changed upon the happening of a certain contingency, namely, the termination of the relation of manager and employer. In that event what was before an exclusive license at $3,000 per year became non-exclusive at $6,500 per year. When the plaintiff's salary and interest in the profits ceased and he had to seek employment

elsewhere, then the license fee was to be more than doubled with the right to the plaintiff to grant the privilege to use the inventions to others. But although the scope and compensation of the license varied or changed according to circumstances, there was but one license and that was granted by the execution of the instrument in question and it still remains intact, neither revoked nor terminated in any way, and it constitutes a perfect protection to the defendant in the use of the inventions against the plaintiff or any one else. It follows that the plaintiff's complaint was improperly dismissed.

The judgment should be reversed and a new trial granted, costs to abide the event.

Judgment affirmed, with costs.

ANDREWS, FINCH and GRAY, JJ., concur; O'BRIEN, J., reads for reversal, with whom PECKHAM, J., concurs.