GOMER, PLAINTIFF IN ERROR, v. McPHEE ET AL., DEFEND-
ANTS IN ERROR.

1. CONTRACTS—PART PERFORMANCE—RECOUPMENT.
A contract providing for the delivery of 1,500,000 feet of lumber to
   be delivered in lots, monthly, and to be paid for as received, is sev-
   erable, and failure to deliver all the lumber specified in the con-
   tract will not preclude a recovery for the amount actually delivered,
   but any damage resulting from such failure or occasioned by the
   breach may be set off or recouped.
2. SAME—SEVERABLE.
It is not the multiplicity of items in a contract which determines its
   severable or non-severable character, but its object.

*Error to the Superior Court of the City of Denver.*

THIS is a suit brought upon a contract for the recovery of certain moneys claimed to be due for lumber alleged to have been delivered to the defendants, McPhee & McGinnity.

The cause was tried to the court without a jury and resulted in a judgment of nonsuit against plaintiff.

The complaint sets out the following agreement:

"DENVER, Colo., Oct. 18, '87.

" This agreement made and entered into this 18th day of October, 1887, between M. C. Jackson, of Pine, Colorado, party of the first part, and McPhee & McGinnity, Denver, Colorado, parties of the second part, witnesseth,

" Party of the first part agrees to furnish out of the first lumber manufactured after this date, delivered on cars at Pine Grove, Colo., 1,500,000 feet of good merchantable, sound lumber, yellow pine or red spruce, said lumber to include any lengths or dimensions from twelve feet to twenty-four feet, inclusive, such as may be ordered. In case parties of the second part do not want lumber shipped, party of the first part agrees to pile same at switch in good condition, all so piled shall be received on the first of each month.

"In consideration of the foregoing McPhee and McGinnity agree to pay on the 10th of each month for all lumber delivered at switch or on cars the month previous at the rate of $13 per M. for common, and $15 per M. for flooring.

(SEAL)        M. C. JACKSON,

(SEAL)        McPHEE & McGINNITY."

And it is alleged that under and in pursuance of the terms of the agreement he delivered a certain amount of lumber to the defendants between October 20, 1887, and November 10, 1887, which was accepted and received by the defendants; that the total price and value of the lumber furnished and delivered as agreed upon was $1,955, of which amount plaintiff avers the sum of $1,000 had been paid, leaving a balance due of $955. And that the said M. C. Jackson assigned, sold and transferred the claim herein sued upon to the plaintiff.

To the complaint several defenses are interposed.

1st. A general denial.

2d. A specific denial that the lumber had been furnished in pursuance of the terms of the agreement and that the quantity of lumber claimed to have been delivered had never been delivered, and that the value of the lumber was of the amount of $1,955.

3d. That under and by virtue of the contract set out in the complaint, M. C. Jackson had contracted to furnish and deliver to the defendants 1,500,000 feet of lumber; that the same must be cut and delivered by him on board the cars at Pine Grove, Colorado, out of the first lumber manufactured by him after the date of the agreement. That he did not complete the agreement, but that under and by virtue of the terms of the contract, Jackson did ship and deliver to defendants certain lumber between the dates in the contract, October 18, and November 10, 1887, which was fully paid for under the terms of the contract.

4th. That they had been garnisheed by the creditors of Jackson and had paid an indebtedness to the amount of $305.65.

5th. That by reason of the failure of Jackson to fulfill the terms of the contract they had been damaged in the sum of $1,500, for which sum they claim an offset against the amount sued for by the plaintiff.

Replication was filed to the various defenses, putting in issue all of the new matter therein set up.

Upon the trial plaintiff introduced testimony to maintain the issues on his part:

First—To establish the assignment of the claim.

Second—That by the books of defendants it appeared that between the 19th day of October, 1887, and the 11th day of November of same year, Jackson had furnished and delivered to the defendants on cars at Pine Grove, under the contract in said complaint set out, 139,940 feet of lumber; and that defendants received the same and credited said Jackson with its value under the contract.

Defendants moved for a nonsuit on the ground that the

evidence failed to show that Jackson had completed his contract, or any cause why he had not completed the contract. The court sustained the motion.

The only controversy in this case is whether or not the court erred in sustaining the motion.

Mr. J. W. HORNER, for plaintiff in error.

Messrs. PATTERSON & THOMAS and Mr. CHARLES HARTZELL, for defendants in error.

RICHMOND, P. J., after stating the facts, delivered the opinion of the court.

The record shows that there was a certain amount of money due from the defendants to the plaintiff for lumber furnished by Jackson, received by defendants, and retained by them. We are aware that there is a conflict of authorities relative to the exact question presented for our consideration in this case, and that for the first time this court is arraying itself upon one side of the controversy.

The contract set out and sued upon provides that Jackson is to deliver 1,500,000 feet of good merchantable, sound lumber, yellow pine or spruce, to include any lengths or dimensions from twelve to twenty-four feet inclusive *such as may be ordered.* In case defendants do not want the lumber shipped then the plaintiff was to pile the same at the switch in good condition and all so piled should be received on the first of each month. And on the 10th of each and every month all lumber delivered at the switch or on the cars the previous month was to be paid for at the rate of $13.00 per thousand and $15.00 per thousand for flooring.

Let us briefly analyze this contract. By its terms the plaintiff was to furnish out of first lumber manufactured after the date of the agreement to the defendants 1,500,000 feet of the kind specified in lengths and dimensions as the defendants might order.

The lumber was not to be shipped unless the defendant so directed. But if furnished according to the lengths and dimensions directed by the defendants, then without order it was to be piled at the switch on the line of the railroad and to be paid for on the 10th of each and every month.

The query is: Is this a severable or an entire contract? We are fully aware of the fact that the appellate courts of New York and Ohio have arrayed themselves upon the negative side of this proposition. But our investigations lead us to believe that the majority of the state courts as well as the better reasoning support the affirmative of the proposition. If any doubt exists in our mind, it is the result of the conflict of authority.

In *Richards et al. v. Shaw*, 67 Ill. 222, this rule is laid down: "It is a rule, supported by a very respectable weight of modern authority, that, if the vendee of a specific quantity of goods sold under an entire contract receive a part thereof, and retain it after the vendor has refused to deliver the residue, this is a severance of the entirety of the contract, and the vendee becomes liable to the vendor for the price of such part. But he may reduce the vendor's claim by showing that he has sustained damage by the vendor's failure to fulfil his contract." The court further remarks that, "Although this rule may be a relaxation of the earlier and more generally received doctrine, that the entire performance, on the part of the vendor, of such a contract as the one in question, is a condition precedent to the payment of price, and the maintenance of an action for its recovery, the rule seems to be a fair and just one, and we are disposed to give it our acquiescence."

In 2 Parsons on Contracts, page 517, the author, after a review of the English authorities, announces the following principle: "If the part to be performed by one party consists of several distinct items, and the price to be paid by the other is apportioned to each item to be performed, or is left to be implied by law, such a contract will generally be held to be severable." * * * But if the consideration to

be paid is not an entirety the contract will be held to be entire, although the subject of the contract may consist of several distinct and wholly independent items. This doctrine has been approved in many cases and we conceive it to be the correct presentation of the law. It is not the multiplicity of items in a contract which determines its severable or non-severable character, but it is its object. It has repeatedly been held as will hereafter appear in this opinion, that the effect of a breach of a severable contract may be set off by the defendant and deducted from the damages recovered, as such breach would manifestly give the defendant a right to sue. In other words, as laid down in *Bowker v. Hoyt et al.*, 18 Pick. 555 : "If the vendee of a specific quantity of goods sold under an entire contract, receive a part thereof, and retain it after the vendor has refused to deliver the residue, this is a severance of the entirety of the contract, and he becomes liable to the vendor for the price of such part; but he may reduce the vendor's claim by showing that he has sustained damage by the vendor's failure to fulfill his contract."

This doctrine is supported in *Booth v. Tyson*, 15 Vt. 515; *Cole v. Swanston et al.*, 1 Cal. 51; *Evans v. C. R. I. R. R. Co.*, 26 Ill. 189.

It may be said that this is different from preventing a party from recovering at all for work already done, or which he has offered to do under contract, but no one is injured by the rule last recited. The whole intent and purpose of the law as announced by the various courts upon this subject and in favor of the affirmative side of the proposition, is to do exact justice between the parties, and, if the loss occasioned by the partial failure can be recouped by the defendant there can be no conceivable reason for allowing him to escape the performance of his part of the contract in paying for lumber actually delivered, received and retained.

In *Tipton v. Feitner*, 20 N. Y. 423, Judge Denio, in delivering the opinion of the court, said : "The position, that one who has violated a contract on his own part, cannot re-

cover for the breach of any of his stipulations by the other party, cannot be sustained." He then distinguishes cases where the consideration is evidently entire in the mind of the party, and says: " The law no doubt intended to discourage people from breaking their engagements, but this is not generally accomplished by visiting them with a penalty beyond the damages sustained by the party injured."

Here is a contract to deliver a certain number of feet of lumber. The exact amount to be delivered during each and every month, and to be paid for as delivered, is not mentioned, but that a certain amount has been delivered and received and retained by the defendants is evident from the record as at present before us, for which the parties defendant say, we decline to pay because the contract was an entirety and an action for breach would not lie on the part of plaintiff unless he shall show a full and complete performance of his contract, to wit: The delivery of the 1,500,000 feet of lumber. To thus contend is to say that under the contract the defendants were under no obligation to pay monthly for one foot of lumber delivered at any time under the terms of the contract until there had been a complete fulfillment of the contract by Jackson. This we think would be leaving the contract entirely one-sided and placing it in the power of the defendants to say, First. You have not delivered the lumber of the dimensions ordered by us, either at the switch or upon the cars, and if you have delivered the lumber so ordered by us, you have not delivered the entire amount of lumber, to wit: 1,500,000 feet, and notwithstanding that we have not paid you monthly as per our contract for the lumber that you have delivered and we have received and now retain and use, we still say you cannot recover.

We cannot subscribe to such a theory. It is a familiar principle of law that rescissions will not be allowed of the whole contract except where the breach goes to the entire consideration.

Here was an agreement where there were to be successive deliveries, separately and independently paid for; which

agreement it seems to us was complete in itself, and whatever damage such breach does cause the injured party must of course be compensated for, and that is in our judgment all that he can reasonably ask.   Contractors will not willfully neglect to carry out their contracts.

The case of *Morgan et al. v. McKee*, 77 Pa. St. 228, was one where the defendant bought 4000 barrels of oil from plaintiff, and eight similar papers of same date were executed by them, each for the delivery of 500 barrels on the last day of consecutive months, payment to be made on each delivery. It was held not to be an entire contract.   And Justice Williams, in delivering the opinion says : " It was proposed to show that the contract was entire, when by its very terms, as set out in the offer, it was severable as respects its performance by both parties.   The petroleum bought by the defendants was not to be delivered at one time for a single and entire consideration, to be paid when the delivery was complete, but it was deliverable monthly by the plaintiff in specified quantities, and the consideration was apportioned and payable as each delivery was made.   The contract therefore was in its very nature severable, and no understanding or agreement of the parties could render it entire so long as its provisions remained unchanged.   If it had been entire and not severable; each monthly delivery for which it stipulated could not have been made, as it was, in the papers executed by the parties, the subject of a distinct agreement, as complete in itself as if it had been a separate and independent bargain.   If the defendants sustained a heavy loss, as alleged, on each of the four lots of petroleum delivered by the plaintiff, it did not absolve them from their obligation to accept and pay for the residue, if tendered according to the terms of the contract ; nor did the plaintiff's failure to make one of the deliveries operate *per se* as a dissolution of the contract and put an end to the rights and obligations of the parties under it.   Doubtless it gave the defendants the right to recoup or set off any damages occasioned by the breach, but none were offered to be shown."

We think that the plaintiff was entitled to recover for the full amount of lumber delivered by Jackson to the defendants and unpaid for, and that the defendants are entitled to set off against the claim for which judgment is sought any damage they may have incurred by reason of the failure of Jackson to fulfill his contract.

The judgment must be reversed and the cause remanded.

*Reversed.*