## SILBERMAN v. FRETZ.

(Supreme Court, Appellate Division, First Department.　December 22, 1896.)

SALE—DELIVERY OF PART—ACTION FOR PRICE.

　　Plaintiff, having failed to deliver cloths to defendant at the time agreed on, wrote defendant, saying that he would have to cancel his order, or wait till plaintiff could get the goods himself, adding that he had part of them on hand, but would "not ship them unless you assure us that you will pay for them on receipt."　Defendant replied, stating that he must have some consideration for his loss, but that, if the goods on hand were the kind ordered, he wanted them at once.　Plaintiff accordingly shipped them.　*Held*, that defendant waived the right to insist on a delivery of other goods ordered, be-

fore being liable to pay for those shipped, and that any remedy he had was for. breach of contract.

Appeal from trial term, New York county.

Action by Joseph Silberman against Samuel S. Fretz. From a judgment for plaintiff, entered on a decision of the court without a jury (38 N. Y. Supp. 151), defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and WILLIAMS, PATTER-SON, O'BRIEN, and INGRAHAM, JJ.

Charles E. Hughes, for appellant.

Julius J. Frank, for respondent.

INGRAHAM, J. The action was brought to recover the contract price for 20 pieces of Helvetia, 48 inches in width. The plaintiff's assignors, who will be here called the plaintiffs, were a firm doing business in New York under the name of Luckemeyer, Schefer & Co. This firm made two contracts with the defendant,—one dated August 12, 1888; the other, August 18, 1886,—by which contracts they sold to the defendant 120 pieces of Helvetia, 60 pieces being 44 inches and 60 pieces being 48 inches, at an agreed price. ' The first 60 pieces, under the contract of August 12th, were to be deliv-ered September 28th or earlier; and the remaining 60 pieces, sold under the contract of August 18th, were to be delivered in November, 1886. It seems that, prior to and at the time of making these con-tracts in question, other contracts were made between the plaintiff's assignors and the defendant for the sale of other goods; no goods, however, having being delivered to the defendant on account of such contracts. This contract of August 12, 1886, which provided for the delivery of 60 pieces of Helvetia, had not, on the 22d of October, 1886, been complied with; and the time of the delivery of the goods sold had expired. The contract of August 18th, which also pro-vided for the delivery of 60 pieces to the defendant, had not been complied with, but the time of its completion had not expired, as these 60 pieces were to be delivered during the month of November. Prior to October, 1886, there seems to have been a new understand-ing between the defendant and a Mr. Sternberger, as representing the plaintiffs, which was reduced to writing and signed by the de-fendant, and delivered to the plaintiffs, by which it was understood that the defendant was to receive from the plaintiffs 40 pieces of Helvetia on the 1st of November, and 20 pieces in addition during the month of November. There were further to be delivered in No-vember 60 pieces, and on or about December 10th, 60 pieces in addition. The contract further provides as follows:

"As soon as I receive the above-mentioned 40 pieces of Helvetia [evidently the 40 pieces to be delivered on the 1st of November], I bind myself, without any further delay, to pay, with them, for the 40 pieces of Gloria I received Octo-ber 18th, amounting to $1,278.93, deducting 7 per cent. discount."

None of these goods appear .to have been delivered on the 1st of November according to this understanding, but on the 18th of No-vember the plaintiffs delivered to the defendant 20 pieces of 48-inch Helvetia, which were received by the defendant, and have not

been paid for. It is to recover for the contract price of these 20 pieces that this action is brought. None of the other goods provided for in either of these contracts of August 12th or 18th, or in the revised agreement of October 22, 1886, has been delivered to the defendant. No counterclaim is set up in the answer, and no attempt is made to offset the damages sustained by the defendant in consequence of the failure of the plaintiffs to deliver the goods sold.

The court below allowed a recovery for the goods which were delivered to and received by the defendant, and the sole question presented here is whether or not the plaintiffs are entitled to recover, without alleging and proving that they had completed the delivery of all the goods which they sold and agreed to deliver upon the 1st of November. The action was tried by the court below without a jury, and a recovery was allowed upon the grounds, as stated by the court, as follows:

"True, the defendant was not bound to accept a delivery of 20 pieces only, if not in accordance with the understanding of the parties. He had a right to reject or retain them, as he saw fit. Yet, if he elected to accept the part delivered, appropriated the same to his own use, and by this act evinced a waiver of the condition as to entire delivery, he then became liable to pay for what was actually delivered."

We think that this is a correct statement of the law, and applicable to this case. The authorities cited by the learned judge in his opinion amply sustain it. The court then said:

"The correspondence between the parties shows that the defendant did not expect to avoid payment for the goods delivered, except by recouping his damages for nondelivery of the remainder. He put himself squarely upon this position, which is entirely inconsistent with the claim now made that he is not liable at all. If the attitude he assumed was warranted by his understanding of the facts, the defendant should have recouped his damages for nondelivery of the other pieces, for this, according to the rulings in Tipton v. Feitner [20 N. Y. 423] and Avery v. Willson [81 N. Y. 341], was the only course then available to him."

The only question presented in this case is whether the facts as proved sustain this conclusion of the court. As before stated, the revised contract was made on October 22, 1886. Whether or not the obligations of the plaintiffs under the contracts of August 12th and 18th were abrogated by this new contract, it is clear that, as between the plaintiffs and the defendant, the time for the delivery of the goods in question was extended, so that the delivery of these goods at the time mentioned in the memorandum on October 22d would have been a good delivery under the original contracts of sale. By the contract of October 22d the defendant expressly agreed that, as soon as he received the 40 pieces of Helvetia, which were to be delivered on November 1st, he would, without any further delay, pay, with them, for the 40 pieces of Gloria which he had received October 16th. By this it is clear that it was understood that, as soon as the 40 pieces of Helvetia were delivered to him, he was to pay for those 40 pieces, and also pay for the Gloria which he had received on October 18th, and which he had not then paid for. Under that contract as it stood, it is clear that he would not be bound to pay for any of the Helvetia until the whole 40 pieces had been

delivered. In other words, it was an entire contract, and the defendant became liable only upon the plaintiffs' completing it and delivering the whole 40 pieces, unless in some way the defendant waived his right to insist upon an entire completion of the contract. See Nightingale v. Eiseman, 121 N. Y. 292, 24 N. E. 475.

The correspondence between the parties after the 22d of October, 1886, justifies, we think, the conclusion of the court below that the defendant waived his right to insist upon a completion of the entire contract before becoming responsible for the goods delivered to him. Under the contract of October 22d these 40 pieces were to be delivered on the 1st of November. The plaintiffs failed to make such delivery within that time, but on November 8th they wrote a letter to the defendant by which they say that 20 pieces of Austria, a material of the same character, but manufactured by a different manufacturer, had been shipped from Europe, and that they had on hand 20 pieces of Gloria; and the defendant was asked to notify the plaintiffs whether he desired those goods. In reply to that letter, on the 9th of November, the defendant wrote the plaintiffs that he did not want the Gloria, and did not want the Austria, as he had not purchased either of them, but that he did want the Helvetia, saying, "But I do want Helvetia at once, or you pay dear for such nonsense." This letter was answered on November 10, 1886, whereby the plaintiffs said:

"If we do not deliver you on time the Helvetia ordered, you cannot fill your contracts. We are in the same position as you are. We have placed your order with Otto Miller & Co., and hold his copy of order; but, owing to having taken too many orders, he cannot deliver in time, and, as we cannot make the goods, you will have to wait, or cancel your orders. * * * We have now in port the 20 ps. 48-in. Helvetia at 67c., and will have them ready for delivery in a few days, but shall not ship them unless you assure us that you will pay for them on receipt."

In answer to this letter the defendant wrote to the plaintiffs, on November 11th, in which he again insisted upon the plaintiffs complying with the contract to deliver Helvetia, complaining of the interruption of his business because of this nondelivery, and insisting upon the liability of the plaintiffs for their failure to comply with their contract, and saying:

"We had better fix up our account fairly, but I must have some consideration for my loss. If the goods in port are Austria, I do not want them; if Helvetia, I do want them at once."

In answer to this letter, the plaintiffs wrote to the defendant, on November 12th, sending samples of the 20 pieces of Austria, and closing with the statement:

"We shall ship no goods until receipt of check for overdue bill, and dispose of the goods held for you unless you pay for them as agreed when order was taken."

And in reply to that letter the defendant wrote, on the 13th of November, again complaining of the plaintiffs' refusal to send the Helvetia, and, after speaking of the 20 pieces of Austria, a sample of which had been sent him, he says:

"I had all the patience with you imaginable, hoping that you meant to make good your contract; but I begin to think that you mean to show me that contracts

mean nothing, not even when partly delivered. You say you will not deliver goods except the first bill is paid. My credit is good anywhere for ten times the amount I owe you, so that will not excuse you from not complying with terms of contract. I am simply holding back settlement because you owe me considerably if not filled very shortly."

This seems to have been the last letter that passed between the parties until after the delivery of the 20 pieces of Helvetia on November 18th. It will be seen that, on November 10th, the plaintiffs stated to the defendant that they had these 20 pieces of Helvetia, but would not ship them unless the defendant assured the plaintiffs that he would pay for them on receipt. In answer to that letter the defendant said that, if the goods in port were Austria, he did not want them; if Helvetia, he wanted them at once. And this was coupled with a statement, not that he would refuse to pay for these 20 pieces, when delivered, until the 40 pieces provided for by this entire contract had been delivered, but objecting to paying for them without an allowance by the plaintiffs for the damages that the defendant had sustained because of their failure to completely fill the contract within the time fixed. Here the plaintiffs stated to the defendant that they had 20 pieces, but that they would not deliver them unless the defendant promised to pay for them upon delivery. The contract had provided that, on the delivery of the 40 pieces, those 40 pieces should be then paid for; and in answer to this request the defendant expressly stated to the plaintiffs that, if they had the Helvetia, he did want them at once. Here was an express agreement accepting the terms upon which the plaintiffs said they would deliver the 20 pieces, namely, a payment for them at once, without insisting upon the entire completion of the contract; and we think, upon the delivery of these 20 pieces, under this contract as modified by the correspondence, that the defendant became liable to the plaintiffs for the amount that he agreed to pay for the 20 pieces. If the defendant had sustained any damage in consequence of a breach by the plaintiffs of their contract of sale, he had a cause of action against the plaintiffs for the damages sustained. He was liable, however, to the plaintiffs for the contract price of the goods sold and delivered; and, as he has failed to set up any counterclaim or offset in his answer, such a cause of action against the plaintiffs cannot be allowed in this action.

The conclusion that we have arrived at is amply sustained by the case of Avery v. Willson, 81 N. Y. 341. In that case, as in this, the question was presented whether they (the defendants)—

"Intended to insist that the remainder should be delivered before they paid, or became liable to pay, for the portion which had already been received and accepted. * * * After this a correspondence ensued which shows that the parties understood the contract differently,—the plaintiffs claiming that the sale was made subject to such stock as the plaintiffs had at the time of receiving the order, and the defendants that it was from the stock list furnished by the plaintiffs' agent, and each insisting upon their own construction of the terms of the sale. * * * In no part of the correspondence did the defendants claim, or take the position, that they were not liable to pay for the boxes received in case the remainder was not delivered. They insisted, until a final disagreement took place, that they were entitled to an amount which was named, and which they stated that they charged to the plaintiffs' account for discount on the list sold

from, and the list last furnished, and for damages which they had sustained by reason of the nondelivery of the remainder, and not that they were not bound to pay for what had been delivered. They received part, negotiated for the residue not delivered, claiming damages in consequence thereof, and thus waived strict performance, and admitted their liability for the price agreed upon, deducting the charge made for discount or damages. This position is inconsistent with the claim now made, that they were not liable at all."

We think, therefore, that upon this correspondence, and the receipt by the defendant of these 20 pieces of goods, without insisting, or notifying the plaintiffs that he intended to insist, upon a delivery of the other 20 pieces, was a waiver of his right to insist upon a complete performance of the contract before he became liable to pay, and that the judgment below was right, and should be affirmed, with costs. All concur.